[Civil No. 2466.   Filed April 24, 1926.]

[245 Pac. 673.]

# THE ARIZONA COTTON OIL COMPANY, a Corporation, Appellant, v. THOMAS T. THOMPSON, Appellee.

1. APPEAL AND ERROR.—Where verdict is supported by any reasonable testimony, Supreme Court will not disturb it because there is a conflict in the evidence.

2. MASTER AND SERVANT—EMPLOYEE'S CHOICE OF DANGEROUS METHOD HELD NOT NEGLIGENCE PER SE.—Selection of dangerous method by employee to do a piece of work, where safe method was available, *held* not negligence *per se*, unless it appears that method chosen is one which under all the circumstances a reasonably prudent man would not use.

3. MASTER AND SERVANT—EMPLOYEE HELD NOT NEGLIGENT PER SE IN DOING WHAT HE HAD SEEN SUPERIORS DO.—In action for injury, when employee, in getting down from platform in defendant's "seed house," upon which he had gone to adjust machinery, stepped on to pile of cotton-seed on floor and seed gave way and fed him into opening in conveyor, through which seed from ginned cotton was conveyed by endless screw, and he had previously seen man appointed to show him his duties and his superintendent get down in same way, and had not been warned against it, *held* employee was not negligent *per se*, and case was properly submitted to jury.

4. TRIAL.—In action for injury, general rule is that to bring to attention of jury that defendant carried liability insurance constitutes reversible error.

5. TRIAL—TESTIMONY THAT STATEMENT SIGNED BY PLAINTIFF, AND OFFERED IN EVIDENCE BY DEFENDANT, IN PERSONAL INJURY CASE WAS PREPARED BY ADJUSTER FOR DEFENDANT'S INSURER HELD PROPER.—In employee's action for injury, where defendant offered in evidence statement by plaintiff to contradict his testimony, plaintiff's testimony, to show that statement was not ingenuous, that it was prepared by insurance adjuster, was proper, notwithstanding rule against showing that defendant is insured.

6. TRIAL—IMPROPER REMARKS OF COUNSEL HELD NOT REVERSIBLE ERROR, IN VIEW OF INSTRUCTIONS.—In action for injury, statement by plaintiff's counsel to jury, "You wouldn't trade places

---

1. See 2 R. C. L. 194.

with the plaintiff for $41,000, you know that," though improper, *held* not reversible error, where court on objection instructed jury to abide by his instructions as to measure of damages, and plaintiff's counsel then repeated them to jury.

7. TRIAL—IMPROPER REMARKS OF COUNSEL HELD NOT REVERSIBLE ERROR, IN VIEW OF REPRIMAND AND CAUTIONARY INSTRUCTION.—In action for injury, statement by plaintiff's counsel to jury, "What would you suffer the pains and agonies he has suffered for?" though improper, *held* not reversible error where court, on objection, reprimanded him, and told jury question was what the damages had been, and counsel then told jury to stay within the instructions.

8. APPEAL AND ERROR—INADVERTENT READING BY COURT OF STATUTE ON CONTRIBUTORY NEGLIGENCE WAS NOT PREJUDICIAL, THOUGH NOT IN ISSUE UNDER PLEADINGS, WHERE CONTRIBUTORY NEGLIGENCE WAS NOT REFERRED TO IN EVIDENCE, ARGUMENT, OR OTHER PART OF INSTRUCTIONS (CIV. CODE 1913, PAR. 3159; CONST., ART. 18, § 5).—In suit under Employers' Liability Law, where contributory negligence was not raised by pleadings, nor referred to in evidence, argument or other part of instructions, error of court in inadvertently reading part of Civil Code of 1913, paragraph 3159, reaffirming Constitution, article 18, section 5, that contributory negligence and assumption of risk are matters for jury, was not prejudicial.

9. APPEAL AND ERROR—IN SUIT UNDER EMPLOYERS' LIABILITY LAW, COURT'S FAILURE TO GIVE INSTRUCTION IN ABSENCE OF REQUEST HELD NOT REVERSIBLE ERROR (CIV. CODE 1913, PARS. 3153–3162). In suit under Employers' Liability Law, where instructions covered the general principles of law, court's failure to instruct jury as to definition of "condition or conditions of employment" was not reversible error, in absence of request for such instruction.

10. APPEAL AND ERROR.—Amount of recovery found by jury in any case, and particularly one for personal injuries, is reviewed with reluctance.

11. APPEAL AND ERROR.—Recovery assessed by jury will not be reviewed, unless jury was governed by passion or hatred, or through inadvertence or ignorance departed from legal measure of damages.

12. DAMAGES—FIXED RATES OF COMPENSATION IN WORKMEN'S COMPENSATION LAW CAN BE CONSIDERED IN DETERMINING WHETHER RECOVERY FIXED BY JURY IN SUIT UNDER PRIOR EMPLOYERS' LIABILITY LAW WAS EXCESSIVE (CIV. CODE 1913, PARS. 3153–3162;

11. See 2 R. C. L. 199.

LAWS 1925, CHAP. 83).—In suit under Employers' Liability Law, wherein amount of compensation was left to jury, provisions of later Compensation Law (Laws 1925, chap. 83), providing fixed rates of compensation, may be considered in determining whether jury erred in standard used in fixing recovery.

13. DAMAGES—$10,000 FOR INJURY TO ONE OF PRINCIPAL BONES OF FOOT HELD EXCESSIVE BY $2,500, IN SUIT UNDER EMPLOYERS' LIABILITY LAW, BEING FOUR TIMES GREATER THAN COMPENSATION FOR LOSS OF ENTIRE FOOT UNDER COMPENSATION LAW WHICH SUPERSEDED FORMER LAW (CIV. CODE 1913, PARS. 3153–3162; LAWS 1925, CHAP. 83).—In suit under Employers' Liability Law, damages of $10,000 for injury to one of principal bones of foot was *held* excessive by $2,500, in view of fact that sum was more than four times amount fixed for loss of entire foot by the Compensation Law (Laws 1925, chap. 83), which had superseded the Employers' Liability Law.

14. DAMAGES—$10,000 RECOVERY FOR INJURY TO FOOT, IN SUIT UNDER EMPLOYERS' LIABILITY LAW, THOUGH EXCESSIVE, SHOULD NOT BE REDUCED TO AMOUNT FIXED BY SUPERSEDING WORKMEN'S COMPENSATION LAW, BUT WOULD BE REDUCED TO $7,500 (CIV. CODE 1913, PARS. 3153–3162; LAWS 1925, CHAP. 83).—Where, in suit under Employers' Liability Law, $10,000 damages fixed by jury for injury to principal bone in foot were excessive, in view of compensation under subsequent Compensation Law (Laws 1925, chap. 83) amount should not be reduced to sum fixed in latter act, because plaintiff had been compelled to employ an attorney, pay doctors and hospital fees, and recovery had been delayed, but would be reduced to $7,500.

See (1, 2) 4 **C. J.**, p. 859, n. 8; 39 **C. J.**, p. 861, n. 86, p. 863, n. 1 New. (3) 39 **C. J.**, p. 1363, n. 28. (4, 5) 4 **C. J.**, p. 983, n. 59; 39 **C. J.**, p. 1011, n. 12. (6, 7) 4 **C. J.**, p. 959, n. 82; 38 **Cyc.**, p. 1479, n. 85 New, p. 1497, n. 13. (8) 4 **C. J.**, p. 1033, n. 37, p. 1035, n. 40. (9) 38 **Cyc.**, p. 1688, n. 19, p. 1694, n. 57, p. 1696, n. 64. (10, 11) 4 **C. J.**, p. 869, n. 96, p. 872, n. 17 New; 39 **C. J.**, p. 1263, n. 33 New; 29 **Cyc.**, p. 843, n. 99. (12, 13) 39 **C. J.**, p. 1263, n. 33 New. (14) 17 **C. J.**, p. 1113, n. 84.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. *Remittitur* to be filed, otherwise judgment will be reversed, with directions for a new trial.

Messrs. Sloan, Holton & Scott and Mr. G. P. Nevitt, for Appellant.

Mr. Jesse C. Wanslee, for Appellee.

LOCKWOOD, J.—Thomas T. Thompson, hereinafter called plaintiff, brought suit under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162) against the Arizona Cotton Oil Company, a corporation, hereinafter called defendant, for personal injuries sustained while employed by defendant at its cotton seed oil mill. The complaint, after setting up the essential formal allegations of a cause of action of this nature, reads in part as follows:

"The plaintiff in the due course of his said labor, services, and employment . . . went upon a certain scaffold to make certain adjustments in the machinery, . . . and, after making said adjustments, started to climb down from said scaffold, and while exercising reasonable and careful care for his own safety stepped from a certain board and iron rod onto a certain pile of cotton seed, and the said cotton seed gave way and slid down and toward a certain conveyor box, in which certain machinery was used to convey cotton seed. . . . That the plaintiff slid down along with the said cotton seed, and his right foot slid into the said conveyor box and became entangled with the machinery in said conveyor box; the said machinery crushing . . . and otherwise mutilating plaintiff's right foot. . . . "

The case was tried before a jury, which returned a verdict for plaintiff in the sum of ten thousand dollars, and, judgment being rendered on the verdict and the usual motion for new trial overruled, defendant appealed to this court.

There are some twelve assignments of error which we will consider as seems advisable. The first and fifth raise the issue substantially that the accident was caused solely by the negligence of plaintiff himself. In order to discuss this point intelligently, we will have to consider the evidence. It appears from

the undisputed testimony that the accident occurred in what is known as the "seed house" of defendant. This is a building about one hundred feet long and fifty feet wide, parallel with the mill. The seed from the cotton which is ginned is conveyed through the seed house by what is known as a "screw conveyor." On the floor of the seed house there is a trough or box which carries in it an auger or endless screw. This floor conveyor box has a lid or cover, which is at times placed on it, and at times left off, in accordance with convenience for operating the mill. The seed is either shoveled into the box by hand, or when it drops down from the upper part of the seed house, as it does if a similar conveyor is carrying too much seed, if the cover is left off, the seed dropping from above piles up over the box and eventually feeds itself into the floor conveyor.

Just before the accident occurred, plaintiff, in the discharge of his duties, among which was to keep the machinery in and about the mill properly greased, oiled and adjusted, had occasion to make an adjustment in the overhead conveyor. In order to reach this overhead conveyor, which was some twelve or fifteen feet from the floor, he climbed up a ladder, walked across the top of a platform some six or seven feet from the floor, climbed a second ladder, and stood upon a small platform from which he could reach up and make the adjustment required. So far the facts are undisputed. After making this adjustment, plaintiff turned to come down. Just a little below the platform on which he stood at the time of making the adjustment there is an iron stay rod, a little larger than an inch in diameter. As to just what happened thereafter the testimony is somewhat in conflict. Plaintiff stated that:

"Of course I don't remember whether I stepped off on these rods that they talk about or not. I don't

know anything about that. Anyway, I jumped off into the seed, and in some way I slid into the conveyor and caught my foot. When I stepped off I was facing north, not in the direction of the conveyor box. I stepped on this pile of seed and walked down as I had been accustomed to doing, and when I got almost to the bottom, very near down to the floor, why, the seed gave away and I felt it give away under my body, and it fed me into the conveyor.''

This is the plaintiff's story of how the accident occurred. Of course, in considering these particular assignments of error, if there is any reasonable testimony supporting the verdict, we will not disturb it because there is a conflict in the evidence. *Tovrea* v. *Yutich,* 24 Ariz. 41, 206 Pac. 595; *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868. The question therefore is, Was it negligence *per se* on the part of plaintiff to step or jump from the platform on to the pile of cotton-seed in order to get down, or was it not? Defendant urges the rule of law to be that, if two methods for doing a piece of work are available to an employee, one being safe and the other dangerous, it is the duty of the employee to pursue the safe method, and that, if he chooses the dangerous one, he is guilty of negligence. Stated as an abstract proposition, this is no doubt true. It must appear, though, that the so-called dangerous method is one which under all the circumstances a reasonably prudent man would not use. *Swansea Lease, Inc.,* v. *Willison,* 28 Ariz. 581, 238 Pac. 389. If under the facts and circumstances of the particular case it cannot be said as a matter of law that a reasonably prudent man would not choose the alleged dangerous method, it is not *ipso facto* negligence for the employee to use it, and the case may be submitted to the jury under proper instructions.

It appears from the evidence in this case that when plaintiff first went to work for defendant, one Riggin,

30 Ariz.—14

who was the foreman of the mill, told an employee named Haney to take plaintiff over to the seed house and show him how to operate it. Haney did so, and among other things took plaintiff up on the very platform where the latter made the adjustment just before he was injured, and showed him how to make such adjustments. Thereafter, as plaintiff testified:

"And then we came back down to the end of the board or other platform. Mr. Haney jumped down on the pile of seed and walked on off, and I followed him. . . ."

On cross-examination he testified:

"When I came down from the platform I stepped on the pile of seed. I came down the same way Mr. Haney came down when he went up there and showed me how to operate this. I have seen others come down that way. I saw Mr. Clark, the superintendent, come down that way. I don't know the exact date, but I went over there one evening, and he and another man were doing some work on some part of the machinery, and when they got ready to come down, they jumped on the pile of seed and came down just the same way as I did when I got hurt. There were no rules of the company posted in and around either one of those buildings warning employees of the danger as to the operation of the mill. . . ."

We think that, where an employee sees the man who is instructed by his foreman to show him his duties perform them in a certain way, and when he later sees the superintendent of the plant do the very same thing, his employer cannot set up that, as a matter of law, he is guilty of negligence in doing the same thing he has seen his superiors do, especially when he has never been warned against such conduct. *Gazette Printing & Pub. Co.* v. *Suits,* 27 Ariz. 371, 233 Pac. 595. There was no error in refusing to take the case from the jury on the

ground that it appeared conclusively it was plaintiff's sole negligence that caused the injury.

The second and fourth assignments of errors raise substantially the same point, to wit, that it was improperly brought to the attention of the jury that defendant carried liability insurance. We have stated in the case of *Blue Bar Taxicab, etc.,* v. *Hudspeth,* 25 Ariz. 287, 216 Pac. 246:

"The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish the rule, and then wink at its violation."

We reaffirm the statement made in that case as a general principle of law. Whenever there is dragged into a case for personal injuries, by counsel for plaintiff, without any legitimate or legal excuse therefor, the fact that defendant is insured by a liability company, we will not hesitate to set aside a judgment in favor of the plaintiff. In this case, however, the abstract of record shows that defendant offered in evidence a statement signed by plaintiff which it is claimed contradicted his testimony given at the trial as to how the accident occurred. It was the contention of plaintiff that the statement was signed under circumstances which would not make it a fair statement as to the facts of the case. He was placed on the stand by defendant in order to identify the document, and was fully examined as to the circumstances surrounding his signature by counsel for the defendant. His own counsel then said:

"Q. Under what conditions did you sign it, Mr. Thompson? A. Well, if I can go back and tell in

my own words just exactly how I did sign it—

"Q. No; just answer the question; did you prepare that statement and sign it? A. I did not.

"Q. Who prepared it, if you know? A. A gentleman who came out there and introduced himself as adjuster for the insurance company.

"Q. What was his name? A. Godwin."

The witness further testified that Mr. Godwin had been after him three or four times to make a statement, and had had his own stenographer prepare it. We think this presents a very different situation from that in the Hudspeth case, *supra.* Since defendant was relying upon and offering in evidence a statement which had been signed but not written by plaintiff, we think it was not error for plaintiff, in attempting to show that the statement was not a completely ingenuous one, to prove it was actually prepared by one who was very much interested in the result of the case. It also appears that the witness Reagan, when called by the defendant, testified, in answer to questions asked by defendant's counsel, to matters which would undoubtedly inform the jury that defendant was carrying liability insurance.

The third and twelfth assignments of error deal with statements made by counsel for plaintiff in his argument to the jury. The two statements to which exception is taken read as follows: "You wouldn't trade places with the plaintiff for forty-one thousand dollars, you know that"; and "What would you suffer the pains and agonies he has suffered for?" And it is claimed these statements held up to the jurors an entirely improper measure of damages, and were calculated to cause them to return a verdict based on passion and prejudice and not on the evidence in the case, and the instructions of the court. Standing alone, these remarks were undoubtedly improper, and might be viewed as being an appeal to the jury to use an im-

proper measure of damages in passing upon the case. But as we have said before in regard to instructions: "They must be construed as a whole, and not by taking therefrom isolated sentences." If this be true in regard to the instructions of the court, to which the jury looks for a guide as to the law, much more is it so in regard to the impassioned language of counsel in their arguments. The reporter's transcript apparently contains the entire argument of counsel for plaintiff, and we think the jury could not possibly have been misled as to the true measure of damages or that the argument, taken as a whole, went so far beyond the bounds of propriety that it should cause a reversal of the case. After the first remark quoted, the court stated, on objection of counsel for defendant:

"The jury has been instructed as to the measure of damages, and they will abide by the instructions of the court in respect to the matter of damages."

And counsel for plaintiff, proceeding with his argument, immediately added:

"These instructions that the court has given you I will repeat,"

—and then read therefrom. After the second remark, on objection of counsel for defendant, and a request that the jury be instructed that such was not the proper method of assessing damages, the court stated:

"Well, I don't think that is a proper statement to make to the jury. It is not a question of what they would do it for. It is a question of what the damages have been."

And counsel for plaintiff immediately stated:

"Very well, I am in error, then. . . . If I have been oversolicitous, if I have stepped too far, don't charge

that up to Mr. Thompson for any mistake that I have made, but be just to your fellowman, and stay within the law. Stay within the evidence, stay within the instructions, and stay within your conscience—that is all we ask.''

Taking into consideration the entire argument of counsel and the remarks of the court, we do not feel that his conduct, although improper, was such as to require a reversal of the case.

The next error complained of is that the court, in reading various provisions of the statute, inadvertently included therein that part of paragraph 3159 which reaffirms the provisions of section 5, article 18, of the Constitution in regard to assumption of risk and contributory negligence, being matters for the jury, and it is strenuously urged that, since the issues of contributory negligence and assumption of risk were not raised by the pleadings, it was error for the court to mention them. It is, of course, true that it is error for the court to instruct the jury upon any issues not contained in the pleadings; the theory being that the minds of the jury should be carefully guarded from being led astray from the issues which the litigants have themselves raised and upon which the law says the case should be determined. But is the error necessarily fatal? In the cases of *Consolidated Ariz. Smelting Co.* v. *Gonzales*, 21 Ariz. 628, 193 Pac. 304, and *Inspiration Copper Co.* v. *Taylor*, 21 Ariz. 632, 193 Pac. 305, the court explicitly instructed the jury contributory negligence was an issue in the case, while in the case at bar defendant did not allege any contributory negligence on the part of plaintiff, and nowhere in the evidence, the argument, or any other part of the instructions was either contributory negligence or assumption of risk brought to the attention of the jury, and the instructions as a whole clearly pointed out the correct issues. We think the mere

reading of a part of paragraph 3159 could not have influenced the jury, and it would be extremely technical to hold the error prejudicial under the circumstances of this particular case.

The next assignment is that the court erred in failing to instruct the jury as to the definition of the term, "condition or conditions of the employment." While it is true, in *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124, we held it was the duty of the court to declare the principles of law necessary for the jury properly to determine the case, we have also held repeatedly that this rule does not require that every instruction which might properly have been asked for by one of the parties must be given by the court of its own volition. Such a rule would be but laying a trap for the trial judge. It is sufficient if the general principles of law are laid down, and, if either counsel desires fuller instruction upon any point, it is his duty to ask it. We do not feel that a failure to define the words "condition or conditions of the employment" was reversible error in the absence of a request for such instruction from counsel.

The next assignment is that the court erred in including, as a measure of plaintiff's damages, "money he has paid out for medical and other attention and expenses while nursing the injury." We think an examination of page 72 of the abstract of record will show clearly there was no error in such instructions.

Assignment No. 9 charges error on the part of the trial court in refusing to give two requested instructions. We have examined these instructions and feel that, taken into consideration with the others given by the court and the entire evidence of the case, it was not error to refuse them.

The last assignment is that the damages in the case were excessive. It is with great reluctance that any

court, either trial or appellate, will review the amount of recovery found by the jury in any case, and particularly one for personal injuries. It should never be done unless it clearly appears that the jury was either governed by passion or prejudice, or else through inadvertence or mistake as to the law it has departed materially from the measure of damages fixed by that law. In this case we believe that the jury must have misunderstood the principle of law regulating the amount of damages.

This action was brought under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162). We have always held this to be a compensatory and not a punitive statute. It is, as a matter of fact, very similar in its nature to the old Workmen's Compensation Law (Civ. Code 1913, pars. 3163–3179), except that in the latter the statute attempted to fix affirmatively the amount of compensation, while in the former the matter was left to a jury. In both cases, however, the theory of the law was the same, that the amount given, either by the verdict of a jury or by settlement under the terms of the Compensation Law, should be compensation to the employee for his injury, and that nothing should be added thereto as a penalty against the employer, since both acts assumed the employer was in no way negligent or to blame for the injury.

The people of Arizona have recently adopted a new Compensation Law (Laws 1925, chapter 83) which fixes a definite rate of compensation for the various injuries which may be sustained. Since this law practically supersedes the Employers' Liability Law, as well as the old Compensation Law, we must take it as representing what the people believe to be proper compensation under either of the old laws for injuries covered thereby.

We therefore think it is only just that, in determining whether or not under the old Employers' Liability Law the jury has mistaken the standard which it should have used in fixing the amount of recovery, the amount fixed by the new Compensation Law, which supersedes it, may and should be considered by us. It appears from that law a man of the age of plaintiff at the time of his injury, who had suffered an injury not merely to one of the principal bones of the foot, but loss of the entire foot, would have been entitled to compensation in the amount of $2,488.99. In this case the jury returned a verdict of ten thousand dollars, more than four times the amount which would have been allowed under the Compensation Law for a somewhat more severe injury than that actually received by plaintiff. We think, therefore, that the verdict is so excessive that it is evident the jury must have acted under a misapprehension of the standard they were to use in fixing the compensation, and it should not be permitted to stand in its full amount.

We do not believe, however, that it should be reduced to the amount fixed by the Compensation Law. Plaintiff was forced to bring an action to recover anything from defendant. He was compelled to employ an attorney, to pay some amount for doctors and hospital fees, and has been delayed in his recovery for a very considerable period of time. All these elements should be considered by us in determining to what extent the verdict should be reduced. We think that $7,500 will give him compensation for his injury in accordance with the principles of the law, and in addition a liberal allowance for the various other items we have mentioned.

If plaintiff shall within 30 days elect to file in this court a *remittitur* in the sum of $2,500, judgment shall be entered in this court in favor of plaintiff, and

against defendant in the sum of $7,500; otherwise let the judgment be reversed, and the cause be remanded for a new trial.

McALISTER, C. J., and ROSS, J., concur.