439 P.2d 497

**Charles A. MYERS and Evelyn M. Myers, husband and wife, Appellants,**

**v.**

**Robert C. ROLLETTE, Appellee.**

**No. 9077–PR.**

Supreme Court of Arizona.

In Banc.

April 3, 1968.

Rehearing Denied May 7, 1968.

bility Law, A.R.S. § 23–801 et seq. (1956). The case was tried before a jury in the Superior Court of Maricopa County, resulting in a verdict for the plaintiff of $130,000. A motion for a new trial was denied upon the condition that the plaintiff agree to a remittitur of $50,625. The remittitur was made and an amended judgment was entered for $79,375.

Plaintiff Rollette alleged that at the time of the accident he was an employee of the defendant Myers. The evidence reveals that Rollette and Myers had known each other since the 1930's, and that in the past Rollette had worked for Myers in a limestone quarry in Illinois. Myers subsequently came to Arizona and in 1960, Rollette called on Myers in Phoenix. During their ensuing communications they decided that it would be to their mutual advantage to purchase and develop as partners, a granite deposit known as the "Turkey Track Pit" some seven or eight miles north of Sunnyslope, Arizona. Both parties admitted that the original plan was that they each would furnish a certain amount of cash and work the deposit as partners. However, their actual relationship was one of the issues in the trial. The trial court took the issue of employment from the jury and ruled in the plaintiff's favor holding that there was an employee-employer relationship instead of a partnership.

Early in 1961, Myers alone bought the pit and some equipment. The two parties both worked at the pit, with "neither one bossing the other around". The plaintiff and defendant had agreed that the plaintiff was to receive $110 per week plus ten cents per ton of gravel "crushed and sold". In March of 1961, plaintiff was injured after helping one of the employees free a large wagon drill. The tower supporting the drill collapsed, knocking the plaintiff to the ground, falling upon his legs.

Rollette was taken by the employee to the Good Samaritan Hospital in Phoenix, where, after approximately an hour wait in the hallway, he was attended by an ortho-

Elsing & Crable, Phoenix, for appellants.

Carson, Messinger, Elliott, Laughlin & Ragan, by Richard H. Elliott, Robert W. Holland, Phoenix, for appellee.

LOCKWOOD, Justice.

This is an action to recover for personal injuries. The plaintiff brought the suit under the provisions of the Employer's Lia-

pedic surgeon. X-rays were taken showing that the plaintiff suffered fractures of the tibia and fibula of the left leg.

After the accident Rollette left Phoenix to go to Illinois and Wisconsin. Later he returned to Phoenix and went back to work in the Turkey Track in November, 1961, under the same working arrangement as before, with the exception that Rollette was to receive fifteen cents per ton of granite "crushed and sold" and no weekly wages. Subsequently Myers shut the pit operation down, and Rollette went to Idaho for three or four months where he helped stake out two mining claims, climbing in mountains that "are straight up and down".

Rollette brought this action under the Employer's Liability Law asking $210,000 for the broken leg, crushed muscles, bruises and abrasions, pain and suffering, lost wages (past and future) permanent disfigurement, shortening of the left leg, weakening and shrinking of the left calf, inflexible left ankle, and partial loss of use of the left leg as a whole. Myers defended upon the grounds, *inter alia,* that Rollette was not an employee, but a "working partner" and further, upon an estoppel for failure to purchase Workmen's Compensation insurance. The jury found in favor of the plaintiff, and after the remittitur defendant appealed to the Court of Appeals, Division I, which affirmed the decision, and appellant petitioned for a review by this Court.

Petitioner posed the following questions:

"1. Did the trial court err in taking the issue of employment from the jury and ruling in appellee's favor thereon when the issue was raised by the pleadings and tried, and substantial evidence in support of appellants' position was introduced?

"2. Did the trial court err in striking the special defense of estoppel raised by appellants, and refusing any consideration thereof by the jury, when there was substantial evidence in support of the defense as set forth in the offer of proof?

"3. Was the verdict of the jury for $130,000 the result of passion and prejudice?

"4. Were the damages allowed by the court after filing of remittitur excessive (a) by ordinary tort-case standards, (b) under the Employer's Liability Law?

"5. Did the trial court err in denying appellants' motion for a new trial on condition of filing of a remittitur?"

▮▮▮▮ We are of the opinion the first two questions should be anwsered in the negative. The evidence taken in the strongest light in favor of the defendant, against whom the court ruled, Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 429 P.2d 442 (1967); Sturm v. Heim, 95 Ariz. 300, 389 P.2d 702 (1964) was that although plaintiff and defendant originally agreed that each would contribute a certain amount of cash and would work the deposit as partners, the original agreement was modified. Myers paid the down payment and assumed obligation for the balance of the purchase price of the unpatented mining claim, and paid for initial purchase of machinery and replacement parts. Rollette did make some purchases but was repaid by Myers. Rollette was in charge of production of gravel, but Myers had the responsibility of marketing it. Myers issued the W-2 income tax returns required of an employer to an employee and when Rollette was injured and in the hospital, decided to close the operation without consulting Rollette. There was no partnership bank account, no partnership business account, no partnership income tax return, nor any agreement regarding sharing profits or losses. Myers was to bear any loss and receive any profits. Myers also paid from his own funds workmen other than Rollette. Myers testified he "considered" Rollette a "working partner". That Rollette was to be paid, not a salary, but on the basis of the amount of granite crushed and sold is not inconsistent with employment as distinguished from partnership. When the relationship of partnership is to be determined as between alleged partners, without involvement of third parties, the intention of the parties, according to the circumstances, in each case will control. Tripp v. Chubb,

69 Ariz. 31, 208 P.2d 312 (1949); Nichols v. Elkins, 2 Ariz.App. 272, 408 P.2d 34 (1965).

■ The only significant evidence of which Myers made an offer of proof regarding estoppel, was in effect that he inquired of his insurance agent about getting "industrial insurance", and when he mentioned this to Rollette, the latter said "Don't get it for me. I have my own." Myers did not ask Rollette what he meant by this, nor what coverage it might be. Myers did not procure industrial insurance because he felt he would be wasting money when Rollette said he had "his own" insurance. This does not fulfill the requirement of an estoppel, viz. conduct by one which induces another to change his position to his detriment in reliance thereon. Rollette's statement was merely an expression of opinion without sufficient basis for Myers to depend upon it for the purpose of failing or refusing to procure industrial insurance. Hence the trial court did not err in denying the defendant the right to try an issue of estoppel.

■ For convenience of discussion, we shall combine the three remaining questions raised by the appellant as they all have reference to the same general subject of damages. In plaintiff's closing argument to the jury, he presented the issue of damages through a chart utilizing what has been characterized as the "formula method" or "per diem method" of computation of damages. There was no objection to the plaintiff's use of the charts and during defendant's argument to the jury counsel referred to the figures in plaintiff's chart in an attempt to demonstrate their inaccuracy. At no time during the trial did defendant object to the use of the chart and the method of computation. Defendant's failure to object constituted a waiver. Beliak v. Plants, 93 Ariz. 266, 379 P.2d 976 (1963).

An abstract of the second part[1] of the chart used by the plaintiff in his argument is as follows:

| | | |
|---|---|---|
| 1. | Pain and suffering at the time of the accident | $5,000 |
| 2. | Weakened bones | 1,000 |
| 3. | Traumatic arthritis at $4.00 per day for 25 years | 36,500 |
| 4. | Limp at $500 per year for 25 years | 12,500 |
| 5. | Medical expenses of "fusion," or braces | 600 |
| 6. | Loss of freedom while in hospital | 1,000 |
| 7. | Pain and suffering at and after operation | 5,000 |
| 8. | Pain and suffering after loss of ankle "stiff shaft" or wearing brace, 9,125 days at $5.00 per day | 45,625 |

During the final argument, plaintiff's counsel told the jury that according to a Dr. Colton's testimony, the projected ankle fusion or brace "is probably going to occur, according to the best of his medical opinion * * * within the next five years". This was an inadvertent mistake on the part of counsel as there was no testimony to substantiate such a statement. The trial court recognized this and after the verdict, made the following order:

"* * * After careful examination of all medical testimony, together with arguments presented by counsel to the jury,

1. The first part of the chart was used to summarize "special damages" and alleged impairment of earning capacity.

it is the opinion of the court that the medical testimony does not adequately support that *a future operation for fusion of the plaintiff's ankle* or necessity for wearing of a *leg brace* was testified to with a reasonable degree of medical certainty; and it further appearing to the Court that the Court was in error in submission of instructions pertaining to *future medical expenses* and that by reason thereof the verdict of the jury was excessive; and it further appearing that counsel in argument to the jury had attempted to attribute a total sum of $50,625.00 with respect to the possibility of such future operation,

"IT IS ORDERED that if plaintiff remits the sum of $50,625.00 on or before the 19th day of July, 1965, defendants' Motion for a New Trial will be denied.

"IT IS FURTHER ORDERED that if plaintiff fails to remit said sum of $50,625.00 on or before said date a new trial will be granted only with respect to damages and the verdict will stand in all other respects * * *." (Emphasis supplied.)

█ The remittitur order of the trial court obviously related to items five through eight of the second part of the plaintiffs' chart, supra. However, the total of these items which the trial court found not to be supported by the medical testimony totalled $52,225 and not $50,625 as expressed in the court's order. Items five and six were apparently overlooked. Further, defendant argues that "precisely the same error" of basing alleged damages on a lack of sufficient testimony concerning a future operation for fusion of plaintiff's ankle occurred in regard to the instruction on loss of earning capacity. A figure of $144,000, contemplating a future operation, was asked by plaintiff for future earnings loss. The trial court failed to take this item into consideration in figuring the basis for remittitur. This Court is in no position to determine what percentage of the figure

asked for should have been eliminated. Nor do we believe the trial court had any reasonable method to determine this. The issue of damages must of necessity be remanded to the trial court for further proceedings.

Defendant urges that the trial court and the Court of Appeals erred when they failed to follow the holding of the 1926 case of Arizona Cotton Oil Co. v. Thompson, 30 Ariz. 204, 245 P. 673. The holding of this case, as construed by the Court of Appeal is that:

"There is language in that decision which states that with the adoption of the Workmen's Compensation Act there came into being *a limitation upon the recovery* under the Employer's Liability Law and that the Employer's Liability Law recovery must bear a reasonable relationship to the amount which would be awarded under the Workmen's Compensation Act. In *Thompson,* the court made allowance for medical and hospital bills and attorney's fees. We are reluctant to find ourselves in affirmative disagreement with our Supreme Court. Is is our opinion that the *limitation which Thompson places on recoveries* under the Employer's Liability Law cannot be sustained. We respectfully decline to follow *Thompson.*" (Emphasis supplied.)

We hasten to point out that if the Court of Appeals had made a correct interpretation of *Thompson* and if *Thompson* was controlling on the issues in point, the Court of Appeals would have no alternative but to follow the *Thompson* holding. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (March 14, 1968).

Under the interpretation given *Thompson* by the Court of Appeals, the award of $130,000, subsequently remitted to $79,375 would be excessive as the award for a similar injury under the Workmen's Compensation Act would be approximately $2,969. In *Thompson,* an award of $10,000 had been made by the lower court for an injury which would have been compensable

under Workmen's Compensation at $2,488.-99. After noting that the jury verdict was more than four times that which would have been allowed under Workmen's Compensation, this Court said:

> "We do *not* believe, however, that it should be reduced to the amount fixed by the Compensation Law. Plaintiff was forced to bring an action to recover anything from defendant. He was compelled to employ an attorney, to pay some amount for doctors and hospital fees, and has been delayed in his recovery for a very considerable period of time. All these elements should be considered by us in determining to what extent the verdict should be reduced. We think that $7,500 will give him compensation for his injury *in accordance with the principles of the law,* and in addition a liberal allowance for the various other items we have mentioned." (Emphasis supplied.) 30 Ariz. at 217, 245 P. at 677.

We did not hold in *Thompson,* as the Court of Appeals states, that there is to be a specific limitation upon recoveries brought when the employee sues the employer instead of accepting the benefits of the Workmen's Compensation Act. We stated that the Workmen's Compensation Act represents "what the people believe to be proper compensation" for injuries arising out of and in the course of an employee's employment, under legislation which removes from the injured party the burden of suing for damages, and of proving negligence on the part of the employer, and eliminates the bar to recovery of contributory negligence on the part of the injured workman.

■ The workman retains the right, however, to choose whether to sue for damages or to accept the provisions of the Workmen's Compensation Act. A.R.S. §

23-906 (1956). If he does elect to sue, he is not limited to the scheduled amounts or formulas set up in the Compensation Act. He takes his chances on whether he will recover in an action for negligence, or if so, in what amount. Hence there is no *limitation* on his recovery based on the amounts which an Industrial Commission award might determine.

■ It is well established that pain and suffering are proper elements to consider in awarding damages in a negligence action for personal injuries. However, we refer to the language of White v. Industrial Commission, 87 Ariz. 154, 348 P.2d 922 (1960) wherein it was succinctly pointed out that under the Workmen's Compensation Law the basis of an award by the Industrial Commission is whether and to what extent the claimant's earning capacity has been affected by his injury arising out of injury in the course of his employment. Justice Bernstein, speaking for the Court, and quoting from Shaw v. Salt River Valley Water Users Ass'n, 69 Ariz. 309, 311-312, 213 P.2d 378, 380 (1950) stated:

> "There is no provision in the [Workmen's Compensation] act which allows compensation for pain and suffering. Therefore pain and suffering which do not lessen the employee's ability to earn wages is not compensable."

Further, as quoted above, this Court noted that such a consideration is "in accordance with the principles of the law * * *". If the "limitation" interpretation by the Court of Appeals of the *Thompson* doctrine was correct, it certainly would not have been "in accordance with the principles of the law" as those principles, as expressed in the Arizona Constitution, expressly prohibit a limitation on recovery of damages.[2]

---

**2.** Ariz.Const. Art. 2 § 31, A.R.S.: "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person";

Ariz.Const. Art. 18, § 6: "The right of action to recover damages for inju-

ries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

Notwithstanding the fact that the Arizona Constitution refers only to restrictive enactments of legislation and statutory limitations on recoveries, an ar-

Since the plaintiff chose to sue the defendant for negligence, rather than proceed under the Workmen's Compensation Act his damages must be determined by the general principles of recovery for injury caused by tortious conduct of the defendant. The general measure of damages for a tort must be the legal, natural and proximate consequences of the act complained of, Gila Water Co. v. Gila Land & Cattle Co., 30 Ariz. 569, 249 P. 751 (1926), and such damages as will fairly and adequately compensate a person for personal injuries may be awarded. Higgins v. Guerin, 74 Ariz. 187, 245 P.2d 956 (1952), 33 A.L.R.2d 769 (1954). This of course includes the element of pain and suffering, which is left to the sound discretion of the jury. Meyer v. Ricklick, 99 Ariz. 355, 409 P.2d 280 (1965).

As we have indicated, because of the circumstances in this case, it must be reversed for a determination of the issue of damages. We need not comment on the questions of adequate evidence on past and future wages, or of alleged improper argument resulting in a verdict of passion and prejudice, as no doubt they will be properly determined upon the new trial.

Opinion of the Court of Appeals, Division I, 6 Ariz.App. 43, 429 P.2d 677 (1967) vacated, and case reversed with directions for further proceedings not inconsistent with this decision.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.

bitrary "conversion" of proper statutes by the courts for improper purposes would indirectly effectuate a direct limitation and thereby violate the effect of the above clauses of the State Constitution.