791 P.2d 639

**Frank S. ELLIOTT and Mary A. Elliott, husband and wife, Plaintiffs/Appellants/Cross–Appellees,**

v.

**James M. VIDEAN, and Renaud, Cook & Videan, P.A., an Arizona corporation, Defendants/Appellees/Cross–Appellants.**

No. 2 CA–CV 89–0111.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 30, 1989.

Review Granted June 5, 1990.

**114**

James P. Cunningham, P.C. by James P. Cunningham, Phoenix, for plaintiffs/appellants/cross-appellees.

Lewis and Roca by Walter Cheifetz, George L. Paul, John P. Frank and Janet Napolitano, Phoenix, for defendants/appellees/cross-appellants.

## OPINION

FERNANDEZ, Chief Judge.

This is an appeal from a judgment of legal malpractice. The appeal involves the proper measure of damages, and the cross-appeal questions the propriety of the malpractice judgment. We affirm the cross-appeal issues and reverse on the appeal issue.

In 1976 appellant Frank Elliott developed a flexible insulated roof top for mobile homes. He obtained a patent on the process in 1977. Elliott and his wife had retained attorney Dan Morris or his firm in several miscellaneous legal matters, and he sought Morris's advice about his invention. Morris prepared the paperwork to incorporate Thermo–Ann Industries, Inc. He later incorporated another corporation for Elliott named Advanced Insulation, Inc. Initially, appellant owned 40% of the shares of stock in Thermo–Ann Industries, Inc., his father-in-law owned 20%, and Morris owned 40%.

In late 1980, after the company encountered financial difficulties, Morris proposed that Elliott meet with Evan Mecham and his brothers as potential investors in Thermo–Ann Industries. Morris was present during negotiations and prepared documents for the transaction, including an irrevocable assignment of Elliott's patent to Thermo–Ann Industries, a five-year employment contract for Elliott and a "purchase agreement" that provided for Mecham Investments, Inc. to invest cash and to pledge its credit in exchange for 51% of Thermo–Ann's stock.

A month and a half after the agreements were signed, Elliott was terminated by Wayne Mecham. A few months later, he retained appellees James Videan and his law firm (Videan) to represent him for a contingent fee of one-third of the gross recovery. Videan filed a lawsuit against Dan Morris; Wayne, Willard, and Evan Mecham; and Mecham Investments, Inc.

In his complaint against Morris, Elliott sought punitive damages, alleging that Morris had willfully and intentionally breached his fiduciary relationship to him while acting as his attorney. Discovery commenced and some depositions were taken.

After the suit had been pending for 23 months, it was dismissed for lack of prosecution on October 11, 1983. Videan learned of the dismissal on November 15. He immediately confirmed the dismissal and within two weeks had obtained six affidavits showing excusable neglect. Videan told Elliott he needed $5,000 to obtain experts' affidavits to show a meritorious claim. Elliott obtained the money from a friend in mid-March 1984. On April 16, 1984, Videan moved to set aside the dismissal. Attached to the motion was the affidavit of an attorney who stated that he had reviewed the verified complaint and that, if the allegations were true, Morris had committed legal malpractice. Videan paid $1,500 for the affidavit. Judge David Grounds denied the motion, finding that it was not timely filed, that there had not been prompt application for relief under Rule 60(c), Ariz.R.Civ.P., 16 A.R.S., and that the attorney's affidavit was insufficient to establish a meritorious claim. No appeal was taken from the ruling, and the statute of limitations barred refiling of the tort claims.

This legal malpractice action was filed in October 1984. At the end of the trial, the jury answered interrogatories in favor of Elliott, finding that the fraud and conspiracy to defraud claims had been proven against Morris, Evan and Wayne Mecham and Mecham Investments, Inc. The jury also found that Elliott had proven the malpractice claim against Morris. Elliott was awarded actual damages of $64,600 and punitive damages of $800,000 on the underlying claims. The trial court later granted Videan's motion for judgment notwithstanding the verdict and set aside the $800,000 punitive damage award.

Elliott contends on appeal that in a legal malpractice claim, the punitive damages that the jury determined should have been assessed against the defendant in the underlying case are part of the value of his lost claim. Videan contends in his cross-appeal that the evidence was insufficient to show that the underlying claims would have been successful, that Elliott failed to show that Videan breached any duty to Elliott, and that the verdict was the product of passion and prejudice. For purposes of clarity, we address the cross-appeal issues first.

## SUFFICIENCY OF THE EVIDENCE: UNDERLYING ACTION

A plaintiff in a legal malpractice action must prove that his suit would have been successful if the attorney had not been negligent. *Phillips v. Clancy*, 152 Ariz. 415, 733 P.2d 300 (App.1986). Videan argues that the evidence was insufficient to support a finding that Morris breached any duty to Elliott. He further argues that there was a lack of clear and convincing evidence of fraud by the defendants in the underlying action. Finally, he contends that no cause of action exists for conspiracy to defraud.

### Breach of Duty by Morris

■ Videan contends that Elliott failed to show that Morris breached any duty he owed to Elliott. Elliott testified that prior to the incorporation of Thermo–Ann Industries, Morris or his firm had been his or his wife's attorney in various matters, including a guardianship, a child support matter, and some domestic relations matters. During the period that Elliott owned stock in Thermo–Ann, Morris served as president and prepared necessary legal documents. Morris denied that he acted as attorney either for Thermo–Ann Industries or for Elliott. Elliott testified that Morris did not advise him that the Mechams and Mecham Investments, Inc. were clients of his firm. Morris did not inform Elliott of the existence of actual or potential conflicts of interest even though he made at least one entry in his personal diary that implied such conflicts existed. Morris did not withdraw as Elliott's attorney during the negotiations with the Mechams or while he was

drafting the legal instruments for sale of the corporation. After Elliott was terminated, Morris assisted Wayne Mecham in auditing the company records in order to justify stopping payments to Elliott under the agreement.

■ Morris's conduct in his relationship with Elliott constituted violations of DRs 1–102, 4–101, 5–104, 5–105, and 7–101 that were in effect in Arizona in 1980. *See* former Ariz.Sup.Ct.R. 29(a). Videan complains that the jury was instructed as to Morris's malpractice by means of "abstracts" of disciplinary decisions. We disagree. The jury was instructed on the existence of certain rules of professional conduct, including the following: a lawyer may not represent clients of differing interests in the same matter; an attorney-client relationship is an ongoing one that gives rise to a continuing duty by the attorney unless and until the client clearly understands or reasonably should understand that the relationship may no longer be depended upon; it is improper for a lawyer to enter into a business relationship with a client without advising the client to seek outside counsel and without fully disclosing the nature of the transaction. The court also instructed the jury as follows:

> These rules are rules of professional conduct only, and a violation of these rules does not establish an act of malpractice. They are merely evidence that you may consider in your determination of whether Dan R. Morris committed malpractice.

Our supreme court has recognized that an "attorney-client relationship is an ongoing relationship giving rise to a continuing duty to the client unless and until the client clearly understands, or reasonably should understand, that the relationship is no longer to be depended on." *In re Weiner,* 120 Ariz. 349, 352, 586 P.2d 194, 197 (1978). The court also held in that case that it is improper for a lawyer to enter into a business relationship with a client without insuring that the transaction is fair to the client and without fully disclosing the nature of the transaction and the presence of any conflict of interests. We find that the evidence supports the jury's conclusion that Morris committed malpractice and that the court properly instructed the jury as to that issue.

### Evidence of Fraud

■ Videan contends next that even assuming Elliott showed a breach of duty, he cannot recover because he lost only a "worthless" cause of action. There was conflicting evidence as to the value of the patent and the corporation at the time the Mechams took control, and the jury resolved that conflict.

Videan also contends that Elliott failed to introduce clear and convincing evidence that any of the underlying defendants committed fraud. The trial court correctly instructed the jury on the nine elements of fraud and on the burden of proof by clear and convincing evidence. *See Staheli v. Kauffman,* 122 Ariz. 380, 595 P.2d 172 (1979). We find sufficient evidence that the underlying defendants entered into the agreements with Elliott without intending to fully perform so as to support the jury's finding of fraud.

### Conspiracy to Defraud

■ Videan also complains that there was no evidence to support the underlying cause of action for conspiracy to defraud against the Mechams and Morris, arguing that no such cause of action exists in Arizona and citing *Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 412 P.2d 47 (1966). The trial court instructed the jury as follows:

> Conspiracy to defraud is a combination of two or more persons to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means. Unlawful includes fraud.

> The damages to be awarded in a conspiracy action are the damages arising out of the acts committed pursuant to the conspiracy and not the conspiracy itself.

> Conspiracy to defraud must be proven by clear and convincing evidence.

"When a civil wrong occurs as the result of concerted action, the participants in the

common plan are equally liable.... The thrust of *Tovrea* is that a mere agreement to do a wrong imposes no liability; an agreement plus a wrongful act may result in liability." *McElhanon v. Hing*, 151 Ariz. 386, 392, 728 P.2d 256, 262 (App. 1985), *affirmed*, 151 Ariz. 403, 728 P.2d 273 (1986). We find no error.

## JURY DETERMINATION OF RULE 60 ISSUES

■ Videan next argues that the court erred in submitting issues to the jury on the sufficiency of Videan's Rule 60 motion. The trial court instructed the jury that he had determined that Judge Grounds's ruling was correct, that an appeal of that ruling would not have been successful, and that Videan was not negligent in filing the motion to reinstate the case more than six months after the entry of dismissal.[1] The jury was then instructed to determine whether Videan was negligent in unduly delaying the filing of the motion and/or in the manner in which he presented the argument for meritorious claim.

■ Videan argues that because a judge determines Rule 60 motions, the trial court was required to determine any issue of malpractice involving his handling of that motion. In support of that contention, Videan cites *Molever v. Roush*, 152 Ariz. 367, 732 P.2d 1105 (App.1986). Division One of this court held in that case that "the question of causation is one of fact for a jury except in those instances where no reasonable persons could disagree.... However, when the consequences of an attorney's alleged negligence bear upon a legal ruling by the court, the causation question is in all circumstances one of law." 152 Ariz. at 374, 732 P.2d at 1112. We agree with that general rule. In this case, the trial court properly narrowed the issues of causation and ruled on several legal issues. It then submitted factual issues to the jury on the reasonableness of Videan's actions with regard to the motion and a determination of whether those actions constituted negli-

gence. *See Phillips v. Clancy, supra.* Thus, the general rule was not violated.

■ Videan also contends that a lawyer does not breach his duty to a client if he has made no legal mistake or if he has committed a mere error in judgment. We agree. The court, however, instructed the jury that a lawyer "is not liable for an error of judgment if he acts in an honest belief that his actions or advice are well founded...."

## PASSION AND PREJUDICE OF VERDICT

### *Publicity*

■ Videan contends that he should be granted a new trial because of the public notoriety of and extensive publicity about the underlying defendant, Evan Mecham, who, as governor of Arizona during the time of trial, was the subject of a number of newspaper articles, including stories about this lawsuit. "The test is whether prejudice seems affirmatively probable and prejudice will not be presumed, but must appear probable from the record." *Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 441, 646 P.2d 319, 326 (App.1982). Aside from Videan's contention, we find no showing of prejudice that denied him a fair trial.

### *Juror Misconduct*

■ During voir dire the court asked the jury panel whether or not they could be impartial in light of the fact that Evan Mecham was involved in the trial. Several jurors volunteered that they had signed recall petitions against Mecham. After trial Videan's counsel discovered that the jury foreman had signed a recall petition but had not disclosed it during voir dire. The court permitted an evidentiary examination of the juror who testified that he had initially attempted to disclose that he had signed a petition, but after the court al-

---

1. Videan argued that Rule 6(e), Ariz.R.Civ. P., 16 A.R.S., applied to permit him an extra five days in which to file his motion to reinstate the case. Because that argument had not been re-

solved in the case law at the time, the trial court ruled that it fell within the realm of Videan's professional judgment.

lowed one of the potential jurors who had signed a recall petition to remain on the panel, he decided not to disclose this fact to the court. He testified that he made that determination because he felt he had no problem being impartial. The trial court was fully aware of the juror's conduct. In *Cota v. Harley Davidson*, 141 Ariz. 7, 10, 684 P.2d 888, 891 (App.1984), this court held as follows:

> If there has been misconduct on the part of a juror, the grant or denial of a motion for mistrial is a matter within the sound discretion of the trial court.... Prejudice will not be assumed, but must appear probable from the record.... The trial court commands the best position to determine what effect, if any, alleged misconduct might have had upon other jurors and whether a mistrial should be granted.

(Citations omitted.) We find no abuse of discretion in the trial court's denial of Videan's motion for a new trial because of juror misconduct.

### Excessive Damages

◼ Finally, Videan asserts that the damages awarded are excessive and that no evidence of Morris's wealth was introduced to support the punitive damage award. Morris testified and was heard and observed by the jury. There was sufficient evidence to support the compensatory damage award. In *Puz v. McDonald*, 140 Ariz. 77, 680 P.2d 213 (App.1984), this court responded to the defendant's contention that the punitive damage award exceeded his assets with the following comment: "We have been cited to no authority, nor have we found any precedent, which would support appellant's contention that the sole fact that an award exceeds a defendant's present assets would be grounds for setting it aside." 140 Ariz. at 79, 680 P.2d at 215. In addition, Division One of this court recently stated in *White v. Mitchell*, 157 Ariz. 523, 529, 759 P.2d 1327, 1333 (App. 1988), in a case involving punitive damages:

> We reject [defendant's] argument that [plaintiff] failed to introduce sufficient evidence from which the jury could have determined an appropriate amount of pu-

nitive damages to award against him. Contrary to [defendant's] argument, *Hawkins v. Allstate Insurance Co.*, 152 Ariz. 490, 733 P.2d 1073[, *cert. denied*, 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177] (1987) does not require specific proof of [defendant's] 'wealth, property, income, education, earning capacity, debts, savings, or credit.' The plaintiff, in a punitive damages case, need only introduce evidence sufficient to allow the trier of fact to calculate an award that is reasonable under the circumstances.

*See also Asphalt Engineers, Inc. v. Galusha*, 160 Ariz. 134, 770 P.2d 1180 (App. 1989). We find no error.

◼ In his reply brief and at oral argument, Videan argued that Elliott failed to prove that he could have collected the $800,000 punitive damage award if it had been rendered against Morris personally. Videan contends that an element of Elliott's legal malpractice cause of action is that the underlying judgment would have been collectible. The only argument on that issue below, however, appears in Videan's motion for judgment notwithstanding the verdict. Videan included among his requested jury instructions one that touched upon the issue. However, the record reveals that the requested instruction was withdrawn. Under the circumstances, then, the issue is not properly before us on appeal.

## VIDEAN'S LIABILITY FOR PUNITIVE DAMAGE AWARD AGAINST MORRIS

◼ Having determined that there is no merit to Videan's cross-appeal issues, we now address Elliott's complaint on appeal that the trial court erred in granting Videan's motion for judgment notwithstanding the verdict and in setting aside the $800,000 punitive damage award against Morris. Elliott argues the award was part of the value of his lost claim.

Punitive damages have historically been awarded against attorneys for legal malpractice. Division One of this court recently sustained a punitive damage award against an attorney. *Asphalt Engineers*,

*Inc. v. Galusha, supra.* In this case, the trial court instructed the jury on punitive damages in accordance with *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986) and *Linthicum v. Nationwide Life Insurance Co.,* 150 Ariz. 326, 723 P.2d 675 (1986). Because an appellate court does not weigh the evidence, we examine the record only to determine whether substantial evidence exists to support the finding by the trier of fact. *Whittemore v. Amator,* 148 Ariz. 173, 713 P.2d 1231 (1986).

Elliott presented evidence as to the value of his underlying action and introduced into evidence a letter by Videan to the attorney for the underlying defendants in which he had evaluated the claim in excess of $1 million and offered to settle for that amount.

Having concluded that the evidence supports the jury's finding that Videan, through his negligence, was the cause of the dismissal of Elliott's underlying claim, we must determine whether the value of that lost claim consists only of the amount of the compensatory damage award or the entire verdict, including the punitive damage award. "In a malpractice action charging that an attorney's negligence in prosecuting an action resulted in the loss of the client's claim, the measure of damages is the value of the lost claims, i.e., the amount that would have been recovered by the client except for the attorney's negligence." *George v. Caton,* 93 N.M. 370, 378, 600 P.2d 822, 830 (App.1979).

Videan argues that because he committed only negligence and because punitive damages are intended to punish and deter future wrongful conduct, he should not be liable for punitive damages for his conduct. Videan, however, misperceives the nature of a malpractice action. The jury award of punitive damages is not a finding that Videan's conduct was motivated by an evil mind; it is a finding that Morris's conduct was. Although Videan's conduct was only negligent, it nevertheless caused Elliott to lose his entire underlying claim. That distinction has been elaborated upon as follows:

The damages Hunt had to pay under the *Sampson* [*v. Hunt,* 233 Kan. 572, 665 P.2d 743 (1983)] judgment included damages called punitive damages from the vantage point of that lawsuit. From the vantage point of *this* lawsuit, should Hunt be successful, all the damages are simply those which proximately resulted from his attorneys' negligence; they are no longer properly called punitive damages. If they were called punitive damages and the trial court's decision properly denied their recovery, then any attorney representing a client who might be assessed punitive damages in a lawsuit could rest easy, secure in the knowledge that any improper handling of the suit, even intentional actions, could not subject the attorney to any malpractice liability at all.

*Hunt v. Dresie,* 241 Kan. 647, 661, 740 P.2d 1046, 1057 (1987).

In a case quite similar to this one, the Texas Court of Civil Appeals held that the injured party in a tort action is entitled to recover punitive as well as compensatory damages. *Patterson & Wallace v. Frazer,* 93 S.W. 146 (Tex.Civ.App.), *reversed on other grounds,* 100 Tex. 103, 94 S.W. 324 (1906). In so holding, the court stated:

It is known that judgments for damages, actual and exemplary, are recovered and collected for slander, and it will not do to say that attorneys at law are not liable to their clients for negligence in managing such cases, because of the difficulty a jury may have in arriving at the damages occasioned by such negligence, for this would absolve them from all liability for negligence in such cases.

93 S.W. at 148.

Legal malpractice constitutes a tort. *Schroeder v. Hudgins,* 142 Ariz. 395, 690 P.2d 114 (App.1984). Arizona has traditionally held that a tortfeasor is liable for all damages that occur as a result of the commission of the tort. *Myers v. Rollette,* 103 Ariz. 225, 439 P.2d 497 (1968). If an attorney's negligence is the cause of dismissal of the underlying claim, the proper measure of damages is all compensatory and punitive damages awarded by the jury in

the trial of the case within a case. We conclude that the trial court erroneously set aside the punitive damage portion of the jury award and thus reinstate that portion of the verdict.

Affirmed in part; reversed in part.

LIVERMORE, P.J., and LACAGNINA, J., concur.