753 P.2d 174

Paul GEHRES, surviving spouse of Violet Gehres, deceased, and Helen Melius, surviving daughter of Violet Gehres, Deceased, Plaintiffs/Appellees,

v.

The CITY OF PHOENIX, a municipal corporation, Defendant/Appellant.

Paul GEHRES, surviving spouse of Violet Gehres, deceased, and Helen Melius, surviving daughter of Violet Gehres, deceased, Plaintiffs/Appellees,

v.

The CITY OF PHOENIX, a municipal corporation; and Vinnie's, Inc., an Arizona corporation, Defendants/Appellants.

Nos. 2 CA–CV 87–0269, 2 CA–CV 87–0275.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 30; 1987.

Review Denied May 3, 1988.

Debus, Bradford and Kazan, Ltd. by Tracey Westerhausen and Tucker and Jessen by Kenneth L. Tucker and Michael Jessen, Phoenix, for plaintiffs/appellees.

Jones, Skelton & Hochuli by William R. Jones, Jr., Peter G. Kline, and Jeffrey B. Miller, Phoenix, for defendant/appellant City of Phoenix.

Lewis and Roca by Brian Goodwin, Susan M. Freeman, Foster Robberson, and James K. Kloss, Phoenix, for defendant/appellant Vinnie's, Inc.

OPINION

ROLL, Judge.

Defendants City of Phoenix and Vinnie's, Inc. (Vinnie's) appeal from a jury verdict awarding a total of $577,600 in favor of Paul Gehres and Helen Melius. The action

arose from the death of Violet Gehres in a Phoenix traffic accident involving a drunk driver who was insolvent.

## FACTS

On May 1, 1984, Lawrence Speck and a companion left work at Motorola and went to the Backstage Restaurant in Scottsdale. Speck drank as many as four drinks before he and his companion proceeded in separate cars to Vinnie's Night Club, then located at Scottsdale Road and Camelback. While at Vinnie's, Speck had at least an additional six alcoholic drinks, as evidenced by cash register receipts of a cocktail waitress reflecting the serving of six brandy and soda cocktails. Thereafter, Speck remained at Vinnie's while his companions left.

There was no direct testimony as to Speck's whereabouts and activities from approximately 10:30 p.m. until nearly 1:00 a.m. when a Phoenix police officer observed Speck's driving, suspected that he was intoxicated, and attempted to stop him. Speck initially gave indications of cooperating with the law enforcement officer. However, Speck suddenly drove away from the officer and a high-speed chase ensued. During the pursuit, Speck drove at speeds ranging between 90 and 100 miles per hour. While attempting to elude police, Speck drove his vehicle into the rear of a vehicle occupied by Violet Gehres at the intersection of 32nd Street and Thomas Road in Phoenix. Neither Violet Gehres nor Speck survived the collision. Speck's blood alcohol content was .27%.

## PROCEDURAL HISTORY

On October 3, 1984, Violet Gehres' husband and surviving daughter filed a complaint in Maricopa County Superior Court against the City of Phoenix, Vinnie's, and the personal representative of Speck's estate. The complaint alleged liability against Vinnie's for having furnished alcoholic beverages to Speck when he was in an intoxicated condition. It also alleged that police officers for the City of Phoenix neg-

ligently conducted the high-speed chase of Speck immediately before the collision occurred.

A jury trial commenced on April 8, 1986, and the case was tried under comparative negligence principles.[1] On April 23, 1986, the jury returned a verdict awarding $527,600 to Paul Gehres and $50,000 to Helen Melius. In apportioning fault, the jury determined that Speck was 95% responsible, Vinnie's was 3% responsible, and the City of Phoenix was 2% responsible. On June 25, 1986, the trial court entered a judgment of joint and several liability against all defendants for total damages of $577,600. Speck's estate is insolvent.

## ISSUES ON APPEAL

We are presented with a consolidated appeal by the City of Phoenix and Vinnie's. Vinnie's argues that a directed verdict in favor of Vinnie's should have been entered at the close of the plaintiffs' case. The City of Phoenix argues that the trial court erred in instructing the jury to disregard an argument of defense counsel for the city. Both Vinnie's and the City of Phoenix argue that in view of the jury's comparative negligence findings, apportionment of damages between solvent defendants, when these damages are primarily the fault of an insolvent defendant, violates due process and equal protection under the law.

## DIRECTED VERDICT

Vinnie's argues that a directed verdict should have been granted for two reasons: 1) insufficient evidence existed that Speck was intoxicated when he was served drinks at Vinnie's; and 2) the high speed chase was an intervening, superseding cause of Violet Gehres' death.

### A. Intoxication

■ The jury heard evidence that Speck was served an additional six drinks at Vinnie's the evening of the fatal collision. Op-

---

1. A.R.S. §§ 12–2505 and 12–2506. These statutes, part of the Uniform Contribution Among Tortfeasors Act, became effective August 31, 1984, and apply to actions filed thereafter. *Shea v. Superior Court of Maricopa County,* 150 Ariz. 271, 723 P.2d 89 (1986).

posing sides offered various hypothetical testimony regarding the possible rate at which alcohol was being eliminated by Speck's body. At the time of the collision, the alcohol content in Speck's blood was .27% and the alcohol level in his ocular fluid was .26%.

In 1981, Speck had been arrested for driving while under the influence of intoxicants (DUI) and had a blood alcohol content of .14%. At that time, Speck manifested obvious signs of intoxication. Vinnie's maintains that in addition to having consumed intoxicants in 1981 when he was arrested for DUI, Speck was also on medication. Vinnie's also maintains that Speck was a frequent and abusive drinker who had become alcohol tolerant, that is, able to reach higher concentrations of alcohol in the blood before signs and symptoms of intoxication became apparent.

We believe that sufficient evidence of Speck's intoxication while being served drinks at Vinnie's was introduced to warrant denial of Vinnie's motion for directed verdict. *Gibson v. Boyle*, 139 Ariz. 512, 518, 679 P.2d 535, 541 (App.1983).

**B. Intervening, Superseding Cause**

Just before 1:00 a.m., on May 2, 1984, a law enforcement officer attempted to stop Speck to investigate possible drunk driving. Speck fled from the officer and a high-speed chase ensued. The chase ended when Speck's vehicle collided with the vehicle occupied by Violet Gehres.

■ It is, of course, foreseeable that an individual who is served alcoholic beverages by a tavern owner will become involved in a traffic accident as a result of his intoxication. *Ontiveros v. Borak*, 136 Ariz. 500, 507, 667 P.2d 200, 207 (1983); *Hebert v. Club 37 Bar*, 145 Ariz. 351, 353, 701 P.2d 847, 849 (App.1985). It matters not that the tavern owner's conduct contributed "only a little" to a plaintiff's injuries. *Ontiveros v. Borak*, 136 Ariz. at 505, 667 P.2d at 205; *Markiewicz v. Salt River Valley Water Users' Association*, 118 Ariz. 329, 338 n. 6, 576 P.2d 517, 526 n. 6 (App.1978).

■ We believe that the police officer's attempt to stop Speck for drunk driving and Speck's reaction thereto were foreseeable. *Hebert*, which involved a tavern customer's parking lot slaying of another customer, is clearly distinguishable. The jury was fully instructed on intervening and superseding cause.

In ruling on a motion for directed verdict, the trial court should only grant such a motion where there is no evidence introduced which would justify a reasonable person in returning a verdict for the opposing party. *Gibson v. Boyle, supra.* A directed verdict admits the truth of all of the evidence introduced by the party opposing the motion, including all reasonable inferences that could be drawn from the evidence. On appeal, this court must view all of the evidence in the light most favorable to the party who opposed the motion for directed verdict. *Id.* Applying this test to the facts presented, the trial court did not err in denying Vinnie's motion for directed verdict on both grounds raised.

**CLOSING ARGUMENT**

■ The City of Phoenix argues that prejudicial error occurred when the trial court directed the jury to disregard an argument made by counsel for the city. In counsel's argument, the jury was told:

> If you find the City of Phoenix 1 percent at fault in this case, 1 percent, it is conceivable that we can pay the entire verdict. I give that to you only for your consideration. I ask you to apportion that fault in the way that you find it, but don't be misled and believe that you're apportioning the damages, because you're not.

After closing argument, a motion was made and discussed and the trial court thereafter instructed the jury:

> Ladies and Gentlemen, later on I'm going to instruct you on the law, but before Mr. Tucker begins, I want you to know that you are hereby instructed to disregard [counsel's] statement that if you return a verdict of only one percent liability against the City, that it is, quote, "quite conceivable that the City will have

to pay the whole amount," unquote. That statement is improper and incorrect. It should not have been said, and it is ordered stricken. You are to disregard it and you are not to consider it in your deliberations.

Plaintiffs maintain that the comments were irrelevant and incomplete and that the judge's admonition was proper. *McGowan v. Story*, 70 Wis.2d 189, 234 N.W.2d 325 (1975).

The comments of defense counsel focused upon which parties would pay the verdict. *Cf. Tryon v. Naegle*, 20 Ariz.App. 138, 142, 510 P.2d 768, 771 (1973). The City of Phoenix cites no case to us standing for the proposition that the jury is entitled to have this matter argued and submitted to them.

We find no error in the trial court's ruling.

## CONSTITUTIONALITY OF APPORTIONMENT OF DAMAGES BETWEEN SOLVENT TORTFEASORS

■ Both the City of Phoenix and Vinnie's argue that it is unconstitutional to require them to bear the full burden of the verdict of $577,600 in view of the jury's determination of 2% and 3% comparative negligence respectively. The estate of Speck, the party determined by the jury to be 95% at fault for the collision, is insolvent. Both Vinnie's and the City of Phoenix argue that they should be required to pay only 3% and 2% of the total judgment.

Prior to the adoption of the Arizona version of the Uniform Contribution Among Tortfeasors Act (UCATA), there was no right of contribution among jointly and severally liable tortfeasors. *Holmes v. Hoemako*, 117 Ariz. 403, 573 P.2d 477 (1977); *State Farm Mutual Insurance Co. v. Factory Mutual Insurance Co.*, 22 Ariz.App. 199, 526 P.2d 406 (1974). Contrary to the argument of the City of Phoenix and Vinnie's, the adoption of a statutory scheme of contribution is not incompatible with the doctrine of joint and several liability.

*American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 188–90, 578 P.2d 899, 906–07 (1978); *Kussman v. City and County of Denver*, 706 P.2d 776, 780–81 (Colo.1985).

The UCATA was not intended to change the common law rules of joint and several liability.[2] S. Butler and G. Gage, *Comparative Negligence and Uniform Contribution: New Arizona Law*, 20 Ariz.Bar.J., Jan. 1984, P. at 16. Arizona presently follows the indivisible injury rule under which all joint tortfeasors are responsible for all of the damages. In *Holtz v. Holder*, 101 Ariz. 247, 418 P.2d 584 (1966), the supreme court stated the policy reason for this rule:

The "single injury" rule is based on the proposition that it is more desirable, as a matter of policy, for an injured and innocent plaintiff to recover his entire damages jointly and severally from independent tortfeasors, one of whom may have to pay more than his just share, than it is to let two or more wrongdoers escape liability altogether, simply because the plaintiff cannot carry the impossible burden of proving the respective shares of causation or because the tortfeasors have not committed a joint tort.

*Id.* at 251, 418 P.2d at 588. *See also American Motorcycle Association v. Superior Court, supra; Seattle First National Bank v. Shoreline Concrete*, 91 Wash.2d 230, 588 P.2d 1308, 1313 (1978).

Until the 1987 legislative enactment abolishing joint liability takes effect, joint and several liability remains the law in this jurisdiction, and one tortfeasor may be liable for the entire judgment amount regardless of the solvency of the other tortfeasors. The risk of an impecunious defendant lies with the other wrongdoers and not with the plaintiffs. This result is clearly contemplated by the inclusion of A.R.S. § 12–2508, which provides for a redistribution of damages in the event that one tortfeasor is unable to pay or is otherwise immune to the contribution actions of the

---

2. We express no opinion as to the effect of the 1987 amendment limiting a defendant's liability to the percentage of fault determination arrived

at by the trier of fact. *See* 1987 Ariz.Sess.Laws, Ch. 1, effective Jan. 1, 1988.

**488**

other tortfeasors. S. Butler & G. Gage, *supra*, at 32.

Since contribution was not available to joint tortfeasors until enactment of UCA-TA, we fail to see how enactment of legislation regarding comparative negligence causes joint liability of joint tortfeasors to violate due process or equal protection guarantees. *Cf. Coates v. Potomac Electric Power Co.*, 95 F.Supp. 779 (D.C.Cir. 1951); *Arctic Structure Inc. v. Wedmore*, 605 P.2d 426, 436–37 (Alaska 1979); *State of Missouri ex rel. Maryland Heights Concrete Contractors Inc. v. Ferriss*, 588 S.W. 2d 489, 491 (Mo.1979).

We affirm.

LIVERMORE, P.J., and FERNANDEZ, J., concur.