782 P.2d 739

**Ronald J. FEDIE and Beverly A. Fedie, surviving parents of Joseph Kenneth Fedie, deceased, Plaintiffs/Appellants,**

v.

**TRAVELODGE INTERNATIONAL, INC., a California corporation; Mesa Travelodge, a joint venture; Karl Franklin and Danita Franklin, husband and wife; Greg Phelps and Jane Doe**

the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed."

Phelps, husband and wife; William Eaton and Jane Doe Eaton, husband and wife, Defendants/Appellees.

No. 2 CA–CV 89–0013.

Court of Appeals of Arizona,
Division 2, Department B.

April 18, 1989.

Reconsideration Denied May 23, 1989.

Review Denied Nov. 21, 1989.

R. Allan McCauley, Scottsdale, for plaintiffs/appellants.

Snell & Wilmer by Richard W. Shapiro and Ellen J. Waxman, Phoenix, for defendants/appellees.

## OPINION

ROLL, Presiding Judge.

In an action for the wrongful death of their son, plaintiffs Ronald J. Fedie and Beverly A. Fedie appeal from the trial court's granting of a directed verdict in favor of defendant Travelodge International, Inc. (Travelodge) and others. For the reasons set forth below, we affirm.

## FACTS

In November 1981, Karl and Danita Franklin were assistant managers of a Travelodge motel in Mesa. John O'Donnal owned J & R Motors, a used car lot across the street from the motel. O'Donnal had recently encountered problems with vandalism at the car lot. On November 21, 1981, Karl rented Room 207 to two young ladies who were friends of O'Donnal. O'Donnal frequently rented rooms at the motel and was given a discount. He arranged for his friends to receive the same discount. Beginning at 8:00 or 9:00 p.m., the ladies were joined in the motel room by several other people, including O'Donnal and an employee of O'Donnal named Cardell Pierson. Danita did not know that Pierson was in the motel room. There was evidence that the occupants of the room were very noisy and that some of the visitors were intoxicated. O'Donnal had a Dan Wesson .357 magnum revolver with him in the room. Danita did not see him with the gun that night, but had observed him carrying a gun on previous occasions.

At approximately 1:00 a.m., Danita heard noises outside her bedroom window and observed two young men on the used car lot. She then called Room 207 to notify

O'Donnal that the young men were on the lot and that it appeared that they were trying to steal something. Moments later, Pierson used O'Donnal's handgun to fire two shots from the balcony of Room 207 at the two young men.[1] One shot struck and killed 18–year-old Joseph Fedie, who was on a public street next to the motel. A second shot wounded 20–year-old David Shleis.

## PROCEDURAL BACKGROUND

On November 18, 1983, the Fedies filed a wrongful death action against Travelodge, the Franklins, and others. The case was tried before a jury. After the Fedies had presented their case, the defendants' motion for directed verdict was granted. The Fedies appeal from this judgment.

## ISSUE

The sole issue on appeal is whether the trial court erred in granting defendants' motion for directed verdict.

### Directed Verdict

A court may grant a directed verdict only when there is "no evidence introduced that 'would justify a reasonable person returning a verdict for the opposing party.'" *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 291, 640 P.2d 851, 853 (1982) (citation omitted); *see also Gehres v. City of Phoenix*, 156 Ariz. 484, 486, 753 P.2d 174, 176 (App. 1987). This court must view the evidence in the light most favorable to the party opposing the motion for directed verdict. *Id.*

In order for the Fedies to prevail on their opposition to the motion for directed verdict, they had to show that the evidence proved that the Franklins had a duty to control Cardell Pierson or to protect Joseph Fedie, that they breached that duty when Danita called Room 207, and that Danita's actions were the proximate cause of Joseph Fedie's death. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982), quoting *Kiser v. A.J. Bayless Markets, Inc.*, 9 Ariz.App. 103, 106–07, 449 P.2d 637, 640–41 (1969).

### Duty

In deciding if the Franklins had a duty, "[t]he question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). If the Franklins owed Joseph Fedie no duty, they are "not liable even though [they] may have acted negligently in light of foreseeable risks." *Id.* Duty is a question of law to be decided by the court. *Id.*

■ The general rule on duty to control the conduct of a third person or to protect another person is set out in Restatement (Second) of Torts § 315 (1965) (Restatement):

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Arizona has adopted this rule. *Davis v. Manglesdorf*, 138 Ariz. 207, 208, 673 P.2d 951, 952 (App.1983). In order for the Franklins to have a duty to control Pierson's conduct, a special relationship had to exist between them and Pierson, such as parent-child, master-servant, possessor of land-licensee, or guardian-ward. Restatement §§ 316–319. For the Franklins to have been required to protect the decedent, a special relationship had to exist between them and Joseph Fedie, such as carrier-passenger, innkeeper-guest, landlord-invitee, guardian-ward, teacher-student, or jailer-prisoner. *Id.* at §§ 314A, 320. None of these relationships existed either between the Franklins and Pierson or the Franklins and the decedent.

The Fedies argue that these Restatement sections are inapplicable to this case because they deal with situations where the

---

**1.** It was stipulated in the joint pretrial statement that Pierson fired the shots.

alleged negligence is passive in nature. They argue that this case is distinguishable because Danita's phone call to Room 207 constituted active negligence. In support of this argument, the Fedies cite Restatement §§ 302 and 302B. Section 302 states:

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission, or

(b) the foreseeable action of the other, a third person, an animal, or a force of nature.

Restatement § 302B, involving the risk of criminal conduct of others, is a special application of § 302(b), and states:

An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

Comment e states that an actor is required to anticipate and guard against criminal misconduct of a third party "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man shall take into account."

One element of duty is foreseeability. *Davis v. Manglesdorf, supra*, 138 Ariz. at 210, 673 P.2d at 754. The Fedies argue that because Danita knew O'Donnal sometimes carried a gun and because a "party" involving alcohol and drugs was going on in Room 207, she should have foreseen that her actions would lead Pierson to commit the criminal act of shooting Joseph Fedie. There is no evidence to support the conclusion that the Franklins should have foreseen the criminal activity of Pierson. Danita did not know that Pierson was in the room, that O'Donnal's gun was in the room, or if Pierson had any dangerous propensities.

### PROXIMATE CAUSE

To present a prima facie case of negligence, the Fedies also had to show that the Franklins proximately caused the shooting of the decedent. Proximate cause is "that which, in a material and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Flowers v. K–Mart Corp.*, 126 Ariz. 495, 498, 616 P.2d 955, 958 (App. 1980). The Restatement § 448 states that a crime is a superseding cause of harm unless the defendant should have foreseen the crime. *See also Gehres v. City of Phoenix, supra.* This is the rule even though the negligence of the defendant afforded the third person the opportunity to commit the crime. *Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 477–78, 595 P.2d 1017, 1022–23. To be an intervening, superseding cause, Pierson's actions must be described as abnormal or extraordinary with the benefit of hindsight. *Rossell v. Volkswagen of America*, 147 Ariz. 160, 169, 709 P.2d 517, 526 (1985), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). Although proximate cause is usually a question of fact for the jury, "the determination of facts upon which there could be no reasonable difference of opinion is in the hands of the court." W. Prosser & W. Keeton, Law of Torts, § 45 at 319–20 (5th ed. 1984). The actions of Pierson in using O'Donnal's handgun to slay Joseph Fedie based upon the phone call of Danita was a superseding cause of Joseph's death as a matter of law.

### CONCLUSION

In this case, the Fedies failed to prove that the Franklins had a duty to control Cardell Pierson or to protect Joseph Fedie. In addition, the criminal act of Pierson constituted a superseding cause of Joseph Fedie's death.

We affirm.

LACAGNINA, C.J., and FERNANDEZ, J., concur.