962 P.2d 909

**William Henry PINER, a single man, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Ruth H. Hilliard, and the Honorable Christopher M. Skelly, judges thereof, Respondent Judges,**

**Billy Donald JONES and Jane Doe Jones, husband and wife; Loling Rabino and John Doe Rabino, husband and wife; Cynthia Gale Richardson and John Doe Richardson, husband and wife, Real Parties in Interest.**

**No. CV–96–0577–PR.**

Supreme Court of Arizona,
En Banc.

July 21, 1998.

Solomon, Relihan & Blake, P.C. by H. Micheal Wright, Kevin J. McAlonan, Phoenix, for Petitioner Piner.

Ricker & Bustamante, L.L.P. by Keith R. Ricker, Phoenix, for Real Parties in Interest Jones and Rabino.

Lewis and Roca, L.L.P. by Craig W. Phillips, Susan M. Freeman, Phoenix, for Real Parties in Interest Richardson.

Burke, Panzarella & Rich by Thomas P. Burke, II, Phoenix, for Amicus Curiae Arizona Association of Defense Counsel.

## OPINION

FELDMAN, Justice.

### FACTS AND PROCEDURAL HISTORY

¶1 On his way to work on Friday, October 12, 1990, William Piner stopped his truck to let a pedestrian cross the street. While he was stopped, a car driven by Billy Jones hit Piner's truck from behind. Police were called to investigate the incident. Piner waited for the police to finish their investigation before calling his physician to complain of pain in his neck, upper back, left arm, and head. The doctor's staff told Piner that the doctor was unavailable but would call him back later that day. Piner then fixed the broken tail lights on his truck and went to work.

¶2 Later that day, Piner was driving to lunch when the car ahead of him stopped to let some pedestrians cross the street. Piner stopped and was again hit from the rear, this time by a vehicle driven by Cynthia Richardson. Feeling similar pain symptoms after this accident, Piner called his doctor's office and was again told that the doctor was occupied and would contact him later.

¶3 Piner was unable to see his physician until Monday. After examination, the doctor concluded that Piner suffered a number of injuries as a result of the collisions. Due to

the nature of the injuries, however, neither she nor any other physician has been able to attribute any particular part of Piner's total injuries to one accident or the other.

¶4   Piner filed an action against Jones and Richardson (together "Defendants") alleging indivisible injuries resulting from the successive impacts. Neither defendant has asserted that he or she could apportion the particular physical harm Piner suffered between the separate accidents. Apparently, all parties agree that both collisions contributed to Piner's total physical injuries.

¶5   Piner moved for partial summary judgment, arguing that because his injuries are indivisible, Defendants should be held jointly and severally liable. *See Holtz v. Holder*, 101 Ariz. 247, 418 P.2d 584 (1966). According to Piner, in a successive accident, indivisible injury case, defendants have the burden of proving apportionment; if neither defendant can demonstrate what portion of the total damage he or she caused, they should be held jointly and severally liable for the entire amount. *See id.* at 251, 418 P.2d at 588.

¶6   Richardson responded that A.R.S. § 12–2506 abolished the system of joint and several liability, leaving only two exceptions in which the doctrine can still be invoked. *See* A.R.S. § 12–2506(D) and (F). Richardson concluded that because neither exception applied to Piner's claim, "the trier of fact must be directed to either apportion, or deny damages in this case." After hearing oral argument on the motion, the trial judge, in a June 4, 1996 order, denied Piner's motion for "the reasons stated [by] Defendant Richardson...."

¶7   When the parties met later for a pretrial conference with the newly assigned trial judge, the main issue in contention was what effect should be given the prior ruling denying Piner's motion for partial summary judgment on the issue of apportionment. Judge Hilliard stated that the previous ruling bound her to instruct the jury that Piner had the burden of proving apportionment of damages between the two collisions and that if he did

not meet this burden, Piner could not recover.[1] Recognizing the potentially devastating effect on Piner's case, the judge granted a continuance to allow Piner to file a special action in the nature of mandamus or prohibition to determine the propriety of the earlier ruling on apportionment. *See* Rules 1(a) and 3, Ariz.R.P.Spec.Act. The court of appeals declined jurisdiction of Piner's special action. We granted review to determine which rule of liability applies to cases in which successive acts of negligence combine to produce separate but indivisible injuries.

## JURISDICTION

■   ¶8   We do not favor accepting special action jurisdiction to review the propriety of interlocutory orders and pretrial rulings, such as orders granting or denying partial summary judgment or denying summary judgment. *See In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 154, 945 P.2d 1283, 1285 (1997). We take that position because trial court rulings often reach us without a full factual record and because allowing endless, piecemeal review burdens the litigants and courts with prolonged and costly procedures. Were we to always consider these actions, we would "frustrate the expeditious resolution of claims, unnecessarily increase both appellate court caseload and interference with trial judges," thus giving appellate priority to those cases handled by the most litigious of counsel. *Id.* (quoting *City of Phoenix v. Yarnell*, 184 Ariz. 310, 315, 909 P.2d 377, 382 (1995)). This being said, we have recognized a few exceptional cases in which we will exercise our discretion to grant special action relief. *See Bledsoe v. Goodfarb*, 170 Ariz. 256, 258, 823 P.2d 1264, 1266 (1991).

¶9   In *Denton*, we recently described such exceptional circumstances as follows:

We believe the nature of the present case merits our acceptance of special action jurisdiction prior to final judgment. The elder abuse statute is relatively new, and the issue presented is one of first

---

1.   Judge Hilliard stated, "I believe what Judge Skelly ruled was that it [joint and several liability] does not apply and that the plaintiff has to prove which accident caused which injuries, and if not, the plaintiff loses." Reporter's Transcript, July 31, 1996, at 14.

impression in Arizona. Trial courts are unclear as to how to decide this issue, which has resulted in contrary rulings in courts in the same county. The issue in this case is of statewide significance, affecting not just the parties involved, but all incapacitated and vulnerable adults and all adult care homes in our state. Further, the issue presented here is purely a question of law.

\* \* \*

[An] elder abuse case that proceeds to trial without damages available for pain and suffering will often be senseless and futile. In this case, reasonably prompt justice can be satisfactorily obtained only through special action relief.

190 Ariz. at 154, 945 P.2d at 1285 (citations and footnotes omitted); *see also Lind v. Superior Court,* 191 Ariz. 233, 954 P.2d 1058 (App.1998). Of course, the list of circumstances outlined in *Denton* is not all-inclusive. We have, for instance, granted relief in a case brought as a special action simply because we believed we should speak to the issue of complex and prolix pleading. *See Anserv Ins. Serv., Inc. v. Albrecht,* 1998 WL 338169 (Ariz.1998) (special action to require trial judge to strike 266–page complaint).

¶ 10 We believe this is one of the few cases in which special action review is warranted. The facts are not contested, and the legal issue can properly be decided on the present record. *See Summerfield v. Superior Court,* 144 Ariz. 467, 469, 698 P.2d 712, 714 (1985) (special action jurisdiction granted to determine whether wrongful death statute encompassed death of stillborn, viable fetus). As in *Denton* and *Summerfield,* the interpretation given the statute here presents a question of first impression that will affect other cases in superior court. Normal "appellate procedures will result in unnecessary cost and delay to all litigants. . . . The congruence of [all] these factors militates in favor of our accepting jurisdiction." *Id.* Thus, we grant the petition for review from the court of appeals' order declining special action jurisdiction and proceed to the merits.

## THE INDIVISIBLE INJURY RULE IN ARIZONA

### A. Evolution of the rule of joint and several liability: Causation and apportionment of damages

¶ 11 Black-letter tort law tells us that as an essential element of the action, the plaintiff must provide evidence that the defendant's conduct caused plaintiff's damage. W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 41, at 263 (5th ed.1984). A plaintiff's case failed if that plaintiff was unable to establish the damage attributable to a defendant's conduct. *See id.* The law eventually recognized an exception for multiple, culpable actors if the plaintiff, through no fault of his own, was unable to apportion causation for a single injury. In such instances, many courts placed the "burden of proof on the issue of causation [apportionment] upon the . . . defendants. . . . [This] seems a very desirable solution where negligence on the part of both defendants is clear, and it is only the issue of causation which is in doubt, so that the choice must be made between letting a loss due to failure of proof fall upon the innocent plaintiff or the culpable defendants." *Id.* at 271.

¶ 12 The present case involves a somewhat different problem. Instead of producing a single injurious event, Defendants' successive acts of negligence resulted in two injuries yielding an indivisible result. The question nevertheless is causation, a concept that presents a "series of distinct problems, more or less unrelated" but includes "apportionment of damages among causes." *Id.* § 42, at 279.

¶ 13 Differentiating between doctrines involving joint tortfeasors acting in concert and joinder of defendants, Prosser's treatise approaches apportionment of damages as a separate topic. *See id.* §§ 46 and 47, at 322–30. The apportionment question arises not only in successive injury cases but every time the total damage results from multiple causes.

Once it is determined that defendant's conduct has been a cause of some damage suffered by the plaintiff, a further question may arise as to the portion of the total damage sustained which may properly be

assigned to the defendant, as distinguished from other causes. The question is primarily not one of the fact of causation, but of the feasibility and practical convenience of splitting up the total harm into separate parts which may be attributed to each of two or more causes. Where a factual basis can be found for some rough practical apportionment, which limits the defendant's liability to that part of the harm of which that defendant's conduct has been a cause in fact, it is likely that the apportionment will be made. Where no such basis can be found, the courts generally hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.

The distinction is one between injuries which are reasonably capable of being separated and injuries which are not.

*Id.* § 52, at 345; *see also Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1, 3–4 (1948) (defendants jointly and severally liable for entire damage resulting from independent acts, even though plaintiff could not prove which defendant caused the injury).

¶ 14    The evolution of Arizona law on the subject reflects these common-law principles. In 1928, Arizona recognized joint and several liability as a well-settled rule but one that applied only in cases involving tortious injury brought about by concerted action of two or more tortfeasors. *See White v. Arizona Eastern R. Co.,* 26 Ariz. 590, 594, 229 P. 101, 102 (1924), *overruled in part by Holtz,* 101 Ariz. 247, 418 P.2d 584. *Salt River Valley Water Users' Ass'n v. Cornum* further limited the definition of joint tortfeasors, holding only those tortfeasors who pursued a "community of purpose" jointly and severally liable to the plaintiff. 49 Ariz. 1, 8, 63 P.2d 639, 643 (1937).

¶ 15    In *Cornum,* the negligent conduct of the two defendants was neither concerted nor related in character or time. Thus, the court held that the defendants could not be joined in one action,[2] they were not jointly liable, and the verdict for the plaintiff against one of the defendants for the entire amount of damages was reversed. *Id.* at 9–10, 63 P.2d at 643–44. However, if proximate cause

had been established, the plaintiff would have been "given the option of deciding against which defendant he would proceed." *Id.* at 10, 63 P.2d at 644. The effect was to require the plaintiff, on pain of dismissal, to apportion damages caused by separate and independent acts of negligence, even when those acts caused an indivisible injury. The same rule was applied in a successive accident case, *Sweet Milk Co. v. Stanfield,* 353 F.2d 811, 813 (9th Cir.1965) (applying Arizona law).

¶ 16    *White* and *Cornum* recognized one exception: when the negligence of different tortfeasors "coincided in time, place, and character," such as "cases involving the negligent operation of colliding instrumentalities," joint and several liability could be applied even though the defendants' actions were not concerted. *Cornum,* 49 Ariz. at 9, 63 P.2d at 643. When the plaintiff's case fell outside the exception, the plaintiff would have to apportion damage by causation or prove that one of the tortfeasors was the proximate cause of the entire injury. *Id.* at 11, 63 P.2d at 644. If the plaintiff was unable to do so, the case failed. *Id.*

¶ 17    In 1966, *Holtz* recognized another circumstance in which a plaintiff could be excused from apportioning damages. The facts in *Holtz* are similar to those in both *Sweet Milk* and the present case. Holtz, like Piner, suffered an indivisible injury from separate accidents. We held that the tortfeasors were jointly and severally liable for Holtz's entire damage. 101 Ariz. at 251, 418 P.2d at 588. Such a result was "desirable as a matter of policy" even though it extended the exception recognized in *White* and *Cornum* to include incidents of successive injury. *Id.*

¶ 18    To reach this result, *Holtz* actually applied two different rules. First, when the injury was indivisible, even though caused by successive accidents, the plaintiff could assert a claim against all wrongdoers without having the burden of "proving the extent of damage or injury caused by each...." *Id.* at 250, 418 P.2d at 587. We described this as the "'single indivisible injury' rule." *Id.*

2. This problem was cured by modern rules of    pleading. *See* Rules 18–20, Ariz. R. Civ. P.

*Holtz* shifted the burden of apportionment to the defendants and gave them incentive to apportion cause by holding each liable for the entire amount of unapportioned damages. Successive tortfeasors are responsible for the entire amount of damages if "their acts occur closely in time and place" and the plaintiff receives successive injuries that "the trier of fact determines to be unapportionable between or among the several tortfeasors." *Id.* at 251, 418 P.2d at 588; *see also Dietz v. General Elec. Co.,* 169 Ariz. 505, 508, 821 P.2d 166, 169 (1991). Thus, as in *Summers,* if the plaintiff could not apportion fault between negligent, potential tortfeasors, the burden of apportionment shifted to the tortfeasors.[3]

¶ 19  *Holtz's* rule on indivisibility of damages necessarily incorporated another: damages were not to be apportioned on the basis of fault. Thus, all defendants were jointly and severally liable for the whole amount of damage. At common law, degrees of fault were never assigned to the parties involved and were unnecessary because they were unrelated to the damages assessed. This rule applied to both contributory negligence and apportionment between tortfeasors. *See* KEETON ET AL., *supra* § 67, at 470, 475–77. This, of course, was the common law in Arizona—each tortious actor was jointly and severally liable for all of the damage caused by his conduct, even if one was much more at fault than another. *See, e.g., Gehres v. City of Phoenix,* 156 Ariz. 484, 487, 753 P.2d 174, 177 (App.1987).

## B. The Impact of UCATA

¶ 20  Defendants claim the Uniform Contribution Among Tortfeasors Act (UCATA) (§§ 12–2501 to 12–2509) effectively overruled *Holtz* and its progeny, thus requiring the factfinder to apportion damages between multiple actors and making each tortfeasor severally liable only for the portion of damages caused by his conduct. If the plaintiff is unable to provide enough evidence to form a basis for apportionment of damages, then, Defendants argue, the claim must be dismissed. We disagree with this view because UCATA does not require limiting liability by apportioning damages but by apportioning fault.

¶ 21  The Arizona Legislature enacted its first version of UCATA in 1984. 1984 Ariz. Sess. Laws ch. 237, § 1, *amended by* 1987 Ariz. Sess. Laws ch. 1, § 3. These provisions replaced contributory negligence with comparative fault and abolished the rule forbidding contribution between joint tortfeasors. Under this new regime, the factfinder allocated a percentage of fault to each culpable actor. Even though the culpable defendants were still jointly and severally liable for all damages, the legislature established a right of contribution that allowed a defendant held liable for more than his share of fault to recover from the other tortfeasors in proportion to their several contributions of fault. § 12–2508 (1984 Ariz. Sess. Laws ch. 237, § 1, *amended by* 1987 Ariz. Sess. Laws ch. 1, § 3). This change was intended to bring about a system in which each tortfeasor would eventually contribute only a portion of damage equal to the percentage of fault attributed to that tortfeasor by the factfinder. *See Dietz,* 169 Ariz. at 508, 510, 821 P.2d at 171, 173. But Arizona's negligence law still produced harsh results when one defendant was insolvent, thus leaving the others unable to obtain contribution. *See, e.g., Gehres,* 156 Ariz. 484, 753 P.2d 174 (defendants assigned five percent of fault held jointly and severally liable for one hundred percent of damages).

---

**3.** When two or more persons by their acts are possibly the sole cause of a harm, or when two or more acts of the same person are possibly the sole cause, and the plaintiff has introduced evidence that the one of the two persons, or the one of the same person's two acts, is culpable, then the defendant has the burden of proving that the other person, or his other act, was the sole cause of the harm.... The real reason for the rule that each joint tortfeasor is responsible for the whole damage is the practical unfairness of denying the injured person redress simply because he cannot prove how much damage each did, when it is certain that between them they did all; let them be the ones to apportion it among themselves. Since, then, the difficulty of proof is the reason, the rule should apply whenever the harm has plural causes, and not merely when they acted in conscious concert....

*Summers,* 199 P.2d at 3–4 (quoting 2 JOHN HENRY WIGMORE, SELECT CASES ON THE LAW OF TORTS § 153, at 865 (1911–12)).

¶ 22    In response, the Arizona Legislature amended UCATA, abolishing joint liability and replacing it with a system that requires the court to allocate responsibility among all parties who caused the injury, whether or not they are present in the action. § 12–2506.   Under the present version of UCATA, "the liability of each defendant is several only and not joint." § 12–2506(D). Taken in isolation, this wording . tends to support Defendants' argument, but several factors militate against such an interpretation.   First, the legislative intent was to cure the *Gehres* "deep pocket" problem of a defendant only minimally at fault yet liable for the full amount of damages. *See* Kelly Catherine Myers, Note, *Tort "Reform" in Arizona: An Analysis of the Demise of Joint and Several Liability*, 35 ARIZ.L.REV. 719, 719 (1993); *Joint and Several Liability: Hearing on H.B.2078 before the House Judiciary Comm.*, 38th Legis., 1st Reg. Sess. (Ariz. 1987) (statement of Rep. Jim Meredith).

¶ 23    A second factor is that the old rule conditioned the plaintiff's recovery on the impossible: if unable to divide the indivisible, the plaintiff was denied relief and the culpable parties were relieved of all responsibility. The injustice inherent in this policy has been repeatedly recognized by our courts. *See, e.g., Holtz*, 101 Ariz. 247, 418 P.2d 584; *Czarnecki v. Volkswagen of America*, 172 Ariz. 408, 413, 837 P.2d 1143, 1148 (App.1991) (applying the indivisible injury rule to a second impact, crashworthiness case); *see also* Michael A. Beale, *Torts—Liability—Independent Tortfeasors Jointly and Severally Liable for Separate Acts of Negligence Where Harm is Indivisible* Holtz v. Holder *(Ariz. 1966)*, 9 ARIZ. L. REV. 129, 134 (1967).   We do not believe that when the legislature attempted to eliminate the injustice it perceived in the deep pocket problem, it also intended to reestablish an unfair regime under which an innocent victim is denied any relief because the damages caused by independent wrongdoers result in an indivisible, unapportionable injury.

¶ 24    Most important, the clear text of UCATA does not require that a defendant's liability be limited by apportioning damages, but only by apportioning fault:

A.   In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint. . . . *Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault. . . . [T]he trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault,* and that amount is the maximum recoverable against the defendant. . . .

B.   In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury. . . .

* * *

F.   (2)   "Fault" means an actionable breach of legal duty, act or omission *proximately causing or contributing to injury or damages sustained by a person seeking recovery,* including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product.

§ 12–2506(A), (B), & (F)(2) (emphasis added).

¶ 25    Thus, while UCATA requires the plaintiff to prove that a defendant's conduct was a cause of injury, it does not instruct us to limit liability by apportioning damages. Instead, each tortfeasor whose conduct caused injury is severally liable only for a percentage of the total damages recoverable by the plaintiff, the percentage based on each actor's allocated share of fault. § 12–2506(B) & (F)(2).

¶ 26    We conclude, therefore, that the present version of UCATA has left intact · the rule of indivisible injury, relieving the plaintiff of apportioning damage according to causal contribution.   When the tortious conduct of more than one defendant contributes to one indivisible injury, the entire amount of damage resulting from all contributing causes is the total amount "of damages recoverable by the plaintiff," as that term is

used in § 12–2506(A). The second part of the *Holtz* rule, however, was abrogated by § 12–2506(A). Contrary to the common law and cases such as *Gehres,* the *fault* of all actors is compared and each defendant is *severally* liable for damages allocated "in direct proportion to that defendant's percentage of fault." § 12–2506(A). To determine each defendant's liability "the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant." *Id.*

¶ 27 Thus in an indivisible injury case, the factfinder is to compute the total amount of damage sustained by the plaintiff and the percentage of *fault* of each tortfeasor. Multiplying the first figure by the second gives the maximum recoverable against each tortfeasor. This result conforms not only with the intent of the legislature and the text of the statute but also with common sense. When damages cannot be apportioned between multiple tortfeasors, there is no reason why those whose conduct produced successive but indivisible injuries should be treated differently from those whose independent conduct caused injury in a single accident. Like our predecessors in *Holtz,* we see no reason to employ a different rule if the injuries occur at once, five minutes apart or, as in the present case, several hours apart. The operative fact is simply that the conduct of each defendant was a cause and the result is indivisible damage.

## C. RESTATEMENT (SECOND) OF TORTS

¶ 28 The interpretation we give the statute also accords with the principles of fairness espoused by modern common law. The RESTATEMENT (SECOND) OF TORTS, for example, requires damages for harm to be apportioned among the various actors whose conduct contributed to the result if the harm is "distinct" or if "there is a reasonable basis for determining the contribution of each cause to a single harm." RESTATEMENT (SECOND) OF TORTS § 433A; *see also Potts v. Litt,* 171 Ariz. 98, 100, 828 P.2d 1239, 1241 (App. 1991). The RESTATEMENT goes on to provide that the plaintiff has the burden of proving that the conduct of each defendant was a cause of the injury, but when a defendant "seeks to limit his liability on the ground that the harm is capable of apportionment . . . . the burden of proof as to the apportionment is upon each such actor." *Id.* § 433B.

¶ 29 Finally, as in *Holtz,* the RESTATEMENT provides that it is the court's function to determine "questions of causation and apportionment, in any case in which the jury may not reasonably differ." But the jury's function is "to determine, in any case in which it may reasonably differ on the issue, . . . the apportionment of the harm to two or more causes." *Id.* § 434(b); *see also Holtz,* 101 Ariz. at 249–51, 418 P.2d at 586–88.

## CONCLUSION

¶ 30 In the present case, the trial judge erred in placing the burden of proof on apportionment on Piner. Assuming Piner proves that the conduct of both Jones and Richardson contributed to the final result, the burden of proof on apportionment is on them. If the judge concludes there is no evidence that would permit apportionment, then the case should be treated as one involving indivisible injuries. If the judge further concludes there is no evidence on which to base a jury finding of inability to apportion, then the jurors must be instructed to apportion. If the evidence on the question of apportionment is conflicting, the jurors should be instructed that if they are able to apportion damages, they should do so, allocating fault and damages for each accident separately. They should also be instructed that if they are unable to apportion damages, then they are to determine Piner's total damages resulting from both accidents. In such case, the indivisible injury rule will apply. In all cases in which the indivisible injury rule applies as either a matter of law or on a jury finding of inability to apportion, the plaintiff's recovery will be the total damage sustained. But in all such indivisible injury cases, the jurors must be instructed to allocate fault in accordance with § 12–2506. The judge is then to multiply each tortfeasor's percentage of fault by the amount recoverable by the plaintiff. Each tortfeasor in an

indivisible injury case is then severally liable for the product of that calculation.

¶ 31 We are aware that the factfinder in an indivisible injury case will be required to allocate a percentage of fault to each of several defendants and possible non-parties involved in more than one accident. This will perhaps be more difficult than the already difficult task of allocating percentages of fault in cases in which there has been a chain of cause and effect that produces injury in a single accident. *See, e.g., Hutcherson v. City of Phoenix,* 1998 WL 351098 (Ariz.1998); *Zuern v. Ford Motor Co.,* 188 Ariz. 486, 937 P.2d 676 (App.1996) (causation of injury is a condition precedent to but different from allocation of fault for the accident; once causation of injury is determined, the factfinder must apportion fault between all parties and non-parties pursuant to § 12–2506(C)). We address that problem in an effort to assist trial courts in implementing the substantive rule of indivisible injury.

¶ 32 *Zuern* cites several authorities that shed some light on the problem, including VICTOR E. SCHWARTZ, COMPARATIVE NEGLIGENCE § 17–1(A), at 352 (3d ed. 1994) ("The process is not allocation of physical causation, which could be scientifically apportioned, but rather of allocating fault, which cannot be scientifically measured."); *Day v. General Motors Corp.,* 345 N.W.2d 349 (N.D.1984) (allocation of fault encompasses both fault that produced the accident and fault that enhanced the injury). We believe the appropriate method is to have the jurors apportion one hundred percent of the fault for each accident separately. The trial judge would then combine the findings and divide by the number of accidents. Using a case involving two accidents as an example, suppose for the first accident the jurors apportion twenty percent fault to the plaintiff, forty percent to non-party #1, and forty percent to defendant X; for the second accident the jurors apportion fifteen percent fault to the plaintiff, ten percent to non-party #2, seventy percent to defendant Y, and five percent to defendant Z. In calculating the amount for which each party is responsible, the trial judge would simply divide each allocation by two and multiply the figure so obtained by the total, indivisible damage sustained by the plaintiff.

¶ 33 In the hypothetical given, therefore, the plaintiff would be allocated seventeen and one-half percent fault for the two accidents combined, non-party #1 twenty percent, defendant X twenty percent, defendant Y thirty-five percent, non-party #2 five percent, and defendant Z two and one-half percent. Each percentage would then be multiplied by the total of the indivisible damage sustained by plaintiff to produce the amount for which each defendant was liable under § 12–2506(A).[4]

¶ 34 The method of allocation we have described would, we believe, comply with the statutory requirement of § 12–2506(B) that the factfinder "shall consider the fault of all persons who contributed to the alleged injury" in making allocations of fault. It would also comply with the holding in *Zuern:*

> [C]ommon sense in the fair application of [a] pure comparative negligence system mandates that the negligence of all parties [and non-parties], including original tortfeasors and crashworthiness tortfeasors, which proximately causes enhanced injuries . . . must be compared.

*Zuern,* 188 Ariz. at 491, 937 P.2d at 681 (quoting *Cleveland v. Piper Aircraft Corp.,* 890 F.2d 1540, 1550 (10th Cir.1989)).

4. Expressed in numbers, the computation would look like this:

| ACCIDENT | PLAINTIFF | DEFENDANT X | DEFENDANT Y | DEFENDANT Z | NON-PARTY #1 & #2 | TOTAL |
|---|---|---|---|---|---|---|
| First | 20.0 | 40.0 | NA | NA | 40.0 | 100.0 |
| Second | 15.0 | NA | 70.0 | 5.0 | 10.0 | 100.0 |
| Totals for both accidents | 35.0 | 40.0 | 70.0 | 5.0 | 50.0 | 200.0 |
| Percentage allocation per accident | 17.5 | 20.00 | 35.0 | 2.5 | 25.0 | 100.0 |

Thus, if plaintiff's total damages were found to be $10,000, defendant X would be liable for $2,000, defendant Y for $3,500, and defendant Z for $250.

¶ 35   The trial court's June 4, 1996 order denying Piner's motion for partial summary judgment and July 31, 1996 ruling regarding jury instruction content are vacated The trial court may proceed in accordance with this opinion.

ZLAKET, C.J., JONES, V.C.J., and MARTONE and MOELLER (Retired), JJ.