249 P.3d 1112

**Jeremy POMPENEO, Plaintiff/Appellant,**

v.

**VERDE VALLEY GUIDANCE CLINIC, INC., an Arizona non-profit corporation; Zach Duran and Jane Doe Duran, husband and wife; Lisa Frances Sims and Bill Sims, wife and husband; Francis Gagliardi; Lisa Pernice, Defendants/Appellees.**

**No. 1 CA–CV 09–0723.**

Court of Appeals of Arizona, Division 1, Department C.

March 24, 2011.

Tiffany & Bosco, P.A. By William J. Simon, Leonard J. Mark, Kevin P. Nelson, Phoenix, Attorneys for Plaintiff/Appellant.

Snell & Wilmer, L.L.P. By Paul J. Giancola, Martha E. Gibbs, Brett W. Johnson, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 After seeing his therapist on October 17, 2006, Jeremy Pompeneo ("Pompeneo") went home, stabbed his girlfriend to death and then attempted suicide by taking an overdose of medication. He now challenges the summary judgment which dismissed his medical malpractice lawsuit against the Verde Valley Guidance Clinic ("Clinic"), and argues that he is entitled to seek damages for his incarceration even though he pled guilty to first-degree murder and was sentenced to life in prison. We disagree and affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND [1]

¶ 2 Pompeneo, a recovering methamphetamine addict, sporadically went to the Clinic in 2005 and 2006 for counseling and prescriptions for psychiatric medication.[2] Additionally, he went to the Mingus Center for inpatient psychiatric care because of "psychotic episodes induced by amphetamines" that had been prescribed by the Clinic's staff. In spite of the inpatient and outpatient treatment, he continued to experience symptoms of mental illness, and the management of his psychotropic drug therapy proved difficult.

¶ 3 Six days after being prescribed a form of amphetamine, he met with his case manager. The case manager's notes reflect that although Pompeneo "denied suicidal and homicidal ideation, plan and intent . . . [Pompeneo] reports that he gets great pleasure out of thinking of killing or hurting his [significant other] and her ex-boyfriend." Later that day, Pompeneo killed his girlfriend.

¶ 4 Pompeneo was indicted for first-degree murder. Pursuant to a plea agreement, he pled guilty to the charge, and the State agreed not to seek the death penalty. After he admitted the factual basis, the superior court accepted the plea, finding that it was entered voluntarily and intelligently. Pompeneo was subsequently sentenced to life imprisonment.

¶ 5 The victim's parents sued the Clinic for their daughter's wrongful death.[3] Subsequently, Pompeneo filed a medical malpractice action against the Clinic and alleged that the Clinic failed to: (1) prescribe appropriate medication; (2) obtain prior medical records;

---

1. We view the evidence in the light most favorable to the nonmoving party. *See Espinoza v. Schulenburg*, 212 Ariz. 215, 216, ¶ 6, 129 P.3d 937, 938 (2006).

2. Pompeneo relapsed the week before he first went to the Clinic in September 2005. He was diagnosed with psychosis, psychotic disorder, attention deficit hyperactivity disorder, and borderline personality disorder.

3. The plaintiffs later amended the complaint and added Pompeneo as a defendant.

(3) admit him to the hospital for treatment; and (4) warn others about his mental state. Pompeneo sought damages for lost wages, loss of personal freedom, loss of civil rights, pain and suffering, severe emotional distress, and mental anguish. After the cases were consolidated, the victim's parents stipulated to the dismissal of their case with prejudice.

¶ 6 The Clinic moved for summary judgment. Pompeneo responded and attached excerpts of testimony from psychiatrists who examined him during the criminal proceedings. The superior court granted the Clinic's motion for summary judgment.

## DISCUSSION

¶ 7 Summary judgment is appropriate where "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). "In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App.2007).

¶ 8 Pompeneo's medical malpractice action can proceed past summary judgment only if he can demonstrate that there was a genuine issue of material fact as to any issue a jury would have to decide. *See Faris v. Doctors Hosp., Inc.*, 18 Ariz.App. 264, 265, 501 P.2d 440, 441 (1972). "In medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages." *Seisinger v. Siebel*, 220 Ariz. 85, 94, ¶ 32, 203 P.3d 483, 492 (2009) (citing *Smethers v. Campion*, 210 Ariz. 167, 170, ¶ 12, 108 P.3d 946, 949 (App.2005)). Here, duty and breach are not at issue. We turn to causation and damages.

¶ 9 Pompeneo argues that the Clinic's negligence was the proximate cause of his criminal conduct. He also contends that his intentional actions did not supersede the Clinic's negligence. In order to prove proximate cause, a "[p]laintiff need only present probable facts from which the causal relationship reasonably may be inferred." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990) (citing *Purcell v. Zimbelman*, 18 Ariz.App. 75, 82, 500 P.2d 335, 342 (1972)). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Id.* (quoting *McDowell v. Davis*, 104 Ariz. 69, 71, 448 P.2d 869, 871 (1968)). Intervening causes become superseding causes when the "intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Id.* Although questions of causation are usually left to the jury, "summary judgment may be appropriate if no reasonable juror could conclude ... that the damages were proximately caused by the defendant's conduct." *Gipson v. Kasey*, 214 Ariz. 141, 143 n. 1, ¶ 9, 150 P.3d 228, 230 n. 1 (2007); *see Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 266, 782 P.2d 739, 742 (App. 1989) ("Although proximate cause is usually a question of fact for the jury, 'the determination of facts upon which there could be no reasonable difference of opinion is in the hands of the court.' " (quoting W. Page Keeton et al., *Prosser and Keeton on Torts,* § 45 at 319–20 (5th ed. 1984))).

## I.

¶ 10 Pompeneo's claim that he is entitled to damages for his unsuccessful suicide attempt is undercut by *Tucson Rapid Transit Co. v. Tocci*, 3 Ariz.App. 330, 414 P.2d 179 (1966). There, Mrs. Tocci hit her head on her sun visor when a transit bus struck her car from behind. *Id.* at 331, 414 P.2d at 180. After the accident she became depressed, was admitted to a hospital and, two days after being released, attempted suicide. *Id.* at 331–33, 414 P.2d at 180–82. During trial, the focus was whether the accident was the proximate cause of her suicide attempt. *Id.* at 333–34, 414 P.2d at 182–83. The trial court refused the bus company's instruction that damages could not be awarded for her subsequent suicide attempt. *Id.* at 332, 414

P.2d at 181. After the verdict, the bus company appealed. *Id.*

¶ 11 On appeal, we found the Restatement (Second) of Torts § 455 (1965) instructive on the proximate cause of her attempted suicide. *Tocci,* 3 Ariz.App. at 335, 414 P.2d at 184. Section 455 provides:

If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity

(a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or

(b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

¶ 12 We also cited to Professor William L. Prosser's treatise on torts that stated:

But if the man is sane, or if the suicide is during a lucid interval, when he is in full command of his faculties, but his life has become unendurable to him by reason of his injuries it is agreed in negligence cases that his voluntary choice is an abnormal thing, which supersedes the defendant's liability.

*Tocci,* 3 Ariz.App. at 336, 414 P.2d at 185 (quoting William L. Prosser, *Prosser on Torts,* § 51 at 320 (3d ed. 1964)) (internal quotation marks omitted).

¶ 13 We found that the trial court erred by refusing to give the instruction that damages could not be awarded for the suicide attempt because there was "no evidence to support plaintiffs' contention that the suicide attempt was the proximate result of defendant's negligence." *Id.* at 338, 414 P.2d at 187. Further, we considered principles of inherent justice and public policy when we limited liability based on the concept of superseding cause. *Id.* at 337, 414 P.2d at 186.

¶ 14 *Tocci* is directly applicable to Pompeneo's claim that he attempted suicide after he committed homicide. Despite his allegations that the Clinic's negligence caused his actions, he presented no facts to challenge the contention that his attempted suicide was volitional. There was no evidence that he was under the influence of any medication, or that his attempted suicide, after the homicide, was anything other than an unsuccessful act. Consequently, summary judgment was appropriate on the attempted suicide claim.

## II.

¶ 15 Pompeneo next contends that the Clinic's negligence caused him to commit the homicide. We disagree.

¶ 16 Following *Tocci,* we find no discernable difference between intentional self harm during a lucid interval and intentional harm to a third party during a lucid interval: in either case, the plaintiff committed an intentional act after the purported negligence by a third party that was not influenced by the negligence. Although the Clinic prescribed the medication to treat his mental illness, Pompeneo presented no evidence to show that he had taken the medication or was under its influence at the time he committed the murder. Additionally, when he pled guilty to first-degree premeditated murder, he told the court that he and his girlfriend "got into an argument, got into a fight and I stabbed her to death." When asked if he committed the crime with premeditation, he responded, "Yes, sir."

¶ 17 Moreover, there was no evidence that the medication the Clinic prescribed caused Pompeneo to act during a rage, frenzy, or delirium. *See id.* at 336, 414 P.2d at 185. Because there is no indication that Pompeneo killed the victim under the influence of medication, and because he admitted acting intentionally, his actions constituted a supervening cause as a matter of law. Consequently, Pompeneo has not raised a genuine issue of material fact regarding causation that would allow the claim to be presented to a jury.

## III.

¶ 18 Finally, Pompeneo alleged lost wages, loss of personal freedom, loss of civil rights, pain and suffering, severe emotional distress and mental anguish. Damages, however, must be supported by admissible evidence. *See Tritschler v. Allstate Ins. Co.,*

213 Ariz. 505, 520, ¶ 52, 144 P.3d 519, 534 (App.2006). Here, Pompeneo presented no evidence, and we find none in the record, whether by affidavit or other testimony, that he suffered compensable damages. There is no evidence that the hospital that treated him after his attempted suicide charged him or filed a lien for the cost of treatment. Moreover, there has been no showing of a compensable injury that would allow recovery for his pain and suffering. *Cf. Myers v. Rollette,* 103 Ariz. 225, 231, 439 P.2d 497, 503 (1968) (finding that the plaintiff may be awarded damages for pain and suffering as part of the damage award for physical injury). Consequently, Pompeneo has not demonstrated any compensatory damages.

¶ 19 The Clinic has urged us to follow decisions from other states that, as a matter of public policy, preclude a plaintiff from recovery as a result of criminal acts. *See Burcina v. City of Ketchikan,* 902 P.2d 817, 821 (Alaska 1995); *Cole v. Taylor,* 301 N.W.2d 766, 768 (Iowa 1981); *Glazier v. Lee,* 171 Mich.App. 216, 429 N.W.2d 857, 859 (1988); *Feltner v. Casey Family Program,* 902 P.2d 206, 207, 209 (Wyo.1995). Because the trial court correctly determined that the Clinic was entitled to summary judgment, we need not address the policy questions raised by those cases.

## CONCLUSION

¶ 20 For the foregoing reasons, we affirm the superior court's order granting the Clinic summary judgment.

CONCURRING: MARGARET H. DOWNIE and PATRICIA A. OROZCO, Judges.