NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBBIN HERREN, *Plaintiff/Appellant*,

*v.*

M. CRIS ARMENTA, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0381
FILED 1-14-2020

Appeal from the Superior Court in Maricopa County
No. CV2015-010101
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Counsel for Plaintiff/Appellant*

Manning & Kass, Ellrod Ramirez Trester LLP, Phoenix
By Anthony S. Vitagliano, Robert B. Zelms, Karly K. White
*Counsel for Defendant/Appellee M. Cris Armenta*

Broening Oberg Woods & Wilson PC, Phoenix
By Richard E. Chambliss, Sarah L. Barnes
*Counsel for Defendants/Appellees Michelle M. Holden and Kelley Moss &
Holden, PLLC*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C A T T A N I**, Judge:

¶1        Robin Herren appeals from the judgment entered against her in favor of M. Cris Armenta, Michelle Holden, and the law firm Kelley, Moss, & Holden, PLLC (collectively, "Appellees") on Herren's claim for legal malpractice arising from Appellees' representation of Herren in litigation resulting from a contract dispute.  For reasons that follow, we affirm, holding that the superior court correctly determined that Herren failed to prove the causation element of a malpractice claim—that but for Appellees' negligence, Herren would have succeeded in the underlying case.

## FACTS AND PROCEDURAL BACKGROUND

### I.        Herren's Litigation Against Tonto Supply, Inc.

¶2        The case in which Herren alleges Appellees committed legal malpractice involved Herren's dispute with Tonto Supply, Inc. over a gravel-mining contract.  In October 2003, Herren and another individual (who is no longer involved in this case) purchased from Santa Fe Railroad Company a quitclaim deed conveying Santa Fe's "right, title, and interest, if any," to the sand and gravel located within 100 feet of the surface on a 40-acre parcel of land in Mohave County (the "Property").

¶3        In 2008, Herren contracted with Tonto Supply to develop a gravel-mining operation on the Property, but the agreement soon devolved into a dispute.  Herren eventually sent Tonto Supply a notice of material breach and hired Armenta, a California-licensed attorney, who sent Tonto Supply a letter terminating the contract.

¶4        Tonto Supply then filed a multi-claim lawsuit against Herren, and Herren hired Arizona-licensed Holden and her firm to assist with the lawsuit.  After Appellees filed an answer and counterclaims on Herren's behalf, Tonto Supply filed five motions for partial summary judgment on various claims and counterclaims and sent Herren a request for admission of 25 factual matters.  Appellees did not respond to the request for

admissions and failed to timely respond to the partial summary judgment motions. Appellees were late responding to four of the motions, even after obtaining an extension following the initial deadline, and Appellees neglected to respond at all to one of the motions.

**¶5** The superior court deemed the requested fact submissions to be admitted and granted Tonto Supply's motions for partial summary judgment, citing among other rationales the fact admissions and the failure to comply with the procedural requirements of the summary judgment rule. *See* Ariz. R. Civ. P. 56(c).

**¶6** Herren appealed the resulting judgment, and another panel of this court affirmed. *Tonto Supply, Inc., v. Herren*, No. 1-CA-CV 11-0495, 2012 WL 6645691 (Ariz. App. Dec. 20, 2012). The court rejected Herren's argument that the judgment against her was in effect an improper discovery sanction based on her deemed admissions. *See id.* at *3, ¶ 18. Although the court noted the admissions and Herren's discovery violations, the court did not rely solely on those factors or on Appellees' failure to comply with the procedural requirements of Rule 56. *Id.* at *3–4, ¶¶ 19, 22. Instead, the court concluded that summary judgment was proper on the merits because, even without considering the deemed admissions, Herren's responses failed to present admissible evidence supporting her opposition to Tonto Supply's claims. *See id.* at *4–5, ¶¶ 23–25. The court held that, because Tonto Supply had submitted "deposition transcripts and other exhibits that provided independent grounds showing that no genuine dispute of material fact existed for trial," Tonto Supply was entitled to judgment as a matter of law. *Id.* at *5, ¶ 25.

## II.    Subsequent Legal Malpractice Claim.

**¶7** Herren filed the instant legal malpractice lawsuit, asserting that Appellees mishandled the Tonto Supply litigation. Herren sought, among other damages, an award of lost profits she asserted she would have received under her contract with Tonto Supply.

**¶8** After the court granted partial summary judgment in favor of Appellees on Herren's claim for lost profits, Appellees filed a motion for summary judgment on the case as a whole, arguing that Herren had failed to provide required expert testimony to establish the causation element of her legal malpractice claims. After considering the parties' briefing on causation, as well as Herren's submission of an initial expert affidavit and a supplemental affidavit, the court granted summary judgment in favor of Appellees. The court found that Herren had failed to present evidence to

establish that, but for Appellees' alleged negligence, she could have avoided or would have been successful in the Tonto Supply litigation. The court concluded that Herren's initial expert affidavit was conclusory and thus insufficient to establish causation, and that the supplemental affidavit was untimely. The court further found that even if the supplemental affidavit had been timely submitted, it would not have established a basis for relief because, although it offered additional detail of how Appellees were negligent, it still lacked any reasoned analysis of causation.

¶9 Herren timely appealed from the resulting judgment, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶10 Herren challenges the superior court's final summary judgment ruling on causation. Summary judgment is proper when no genuine issues of material fact exist and those undisputed facts establish that the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309–10 (1990). Even an issue of fact (like causation) that is generally reserved for the jury is amenable to summary judgment "if no reasonable juror could conclude that the . . . damages were proximately caused by the defendant's conduct." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 n.1 (2007). We review de novo the superior court's ruling granting summary judgment, considering the facts and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163, ¶ 11 (2017); *Cramer v. Starr*, 240 Ariz. 4, 7, ¶ 8 (2016).

¶11 As in any negligence case, a plaintiff asserting legal malpractice must prove (1) duty, (2) breach, (3) causation, i.e., "that the [attorney's] negligence was the actual and proximate cause of injury," and (4) damages. *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 12 (2004). For alleged negligence during litigation, the plaintiff must prove a "case within a case" to establish causation: but for the attorney's negligence, the plaintiff/client would have succeeded in the underlying lawsuit. *Id.*; *Elliott v. Videan*, 164 Ariz. 113, 119–20 (App. 1989).

¶12 Because Herren's claims sought damages arising from the unsuccessful outcome in the Tonto Supply litigation, she was required to provide an expert opinion affidavit detailing how Appellees' negligence damaged her, i.e., show that but for the alleged negligence, she would have been successful in the Tonto Supply litigation. *See* A.R.S. § 12-2602(B)(4); *Elliott*, 164 Ariz. at 119–20.

¶13 An expert affidavit in this context must detail the "manner in which the [attorney's] acts, errors or omissions caused or contributed to the damages or other relief sought" by the plaintiff. *See* A.R.S. § 12-2602(B)(4). "But affidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." *Florez v. Sargeant*, 185 Ariz. 521, 526–27 (1996) (collecting cases).

¶14 Herren submitted a preliminary affidavit from an expert to attempt to establish causation. Although the preliminary affidavit offered some detail as to how Appellees' performance in the Tonto Supply litigation was sub-standard, it offered only a conclusory statement as to causation:

> In my opinion, Plaintiff Herren was damaged as a result of the Defendants' negligence. The careless manner in which her case was handled by her attorneys caused or contributed to the final judgment entered against her. She certainly lost any chance she had to present her factual and legal positions in the most persuasive fashion.

But "[n]egligence is not actionable in the abstract," *Barrett v. Harris*, 207 Ariz. 374, 382, ¶ 28 (App. 2004) (citation omitted), and the proffered affidavit failed to point out *how* Appellees' negligence "caused or contributed" to the unsuccessful outcome in the Tonto Supply litigation. *See* A.R.S. § 12-2602(B)(4). It did not describe any facts or identify any legal positions that could have led to a different result in the underlying case, and it provided no explanation of what would have occurred (and why) had the underlying lawsuit been litigated properly. *See Florez*, 185 Ariz. at 526; *Molever v. Roush*, 152 Ariz. 367, 374 (App. 1986).

¶15 Nor did the supplemental affidavit cure the problem. First, the superior court could properly reject the supplemental affidavit as untimely because it was filed one month after the discovery deadline, without any showing of good cause, and after Appellees had already submitted their dispositive motions. *See* Ariz. R. Civ. P. 26.1(a)(6), 37(c)(1). Second, and more importantly, as the superior court noted, the supplemental affidavit was insufficient because it still did not explain how, but for Appellees' negligence, Herren would have achieved a more successful outcome to her dispute with Tonto Supply. The supplemental affidavit offered additional examples and detail of Appellees' deficient performance. And it referenced "causation" more times than the preliminary affidavit. But it did not provide meaningful information describing how Herren could have prevailed but for Appellees' failures.

¶16 The supplemental affidavit stated, for example, that "Herren's chances of prevailing on any theory in the underlying case were certainly diminished, if not completely extinguished, by the inadequate representation," without explaining what theory would have led to Herren prevailing. The supplemental affidavit similarly offered an opinion that "[b]ut for" Appellees' substandard conduct in "instigating and handling" the Tonto Supply litigation, "Herren would have had a better chance of success in her defense of that lawsuit" and "would have been able to mount a successful defense." But again, the affidavit failed to describe what meritorious defense could have been offered by competent counsel.

¶17 As an alternative to relying on Appellees' deficient performance in the course of the Tonto Supply litigation, the supplemental affidavit posited that Appellees caused Herren harm because they should have advised her to avoid the litigation entirely, or at least to consider settling or abandoning the case at an early stage. But this causation theory relies on the premise that Herren would in fact have abandoned the litigation or settled with Tonto Supply if so advised, and Herren did not present any evidence to that effect. Nor did the affidavit explain how a competent attorney could have persuaded her to drop the case, particularly given that Herren continues to assert she would have won the case against Tonto Supply with competent representation.

¶18 In sum, neither the initial expert affidavit nor the supplemental affidavit proffered either (1) a theory under which Herren could have prevailed in the underlying litigation or (2) facts showing that Herren would have dropped the litigation if she had been competently advised by Appellees. Accordingly, the superior court did not err by concluding Herren had failed to demonstrate a genuine issue of fact as to causation and by entering summary judgment in favor of Appellees.[1]

---

[1] Herren also challenges the superior court's partial summary judgment ruling in favor of Appellees on lost profits. That ruling was based on the court's conclusion that Herren never owned the sand and gravel rights on which those damages were based: because Santa Fe had conveyed any sand and gravel rights it owned to a third party years before its transaction with Herren, Santa Fe retained no rights that could be conveyed to Herren by the quitclaim deed in 2003.

Herren asserts that although Santa Fe previously conveyed of "all of its right, title and interest in and to all of the . . . minerals whatsoever" in

## CONCLUSION

¶19          For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

1953, Santa Fe implicitly retained a "profit à prendre," i.e., the "right or privilege to go on another's land and take away something of value from its soil." *See* Black's Law Dictionary (11th ed. 2019).  Although skeptical of Herren's assertion that the 1953 conveyance conveyed something less than all of Santa Fe's remaining rights to sand and gravel, we need not and do not address Herren's profit à prendre argument because the summary judgment ruling on causation is dispositive as to the entire case.